ACCEPTED
03-15-00248-CV
7127861
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 4:48:15 PM
JEFFREY D. KYLE
CLERK

## No. 03-15-000248-CV

_____

In the Third Court of Appeals
at Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 4:48:15 PM
JEFFREY D. KYLE
Clerk

_____

## BRIGHAM EXPLORATION COMPANY, ET AL,
### Defendants/Appellants,

## v.

## RAYMOND BOYTIM, ET AL,
### Plaintiffs/Appellees.

_____

*On Appeal from the 201st Judicial District Court of Travis County, Texas*
*Honorable Lora Livingston, Presiding Judge*
*Cause No. D-1-GN-11-003205*

_____

## APPELLANTS' BRIEF OF THE BRIGHAM DEFENDANTS

_____

**THOMPSON & KNIGHT LLP**
Debora B. Alsup
Texas Bar No. 02006200
debora.alsup@tklaw.com
Benjamin Hallmark
Texas Bar No. 24069865
benjamin.hallmark@tklaw.com
98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701-4238
(512) 469-6100
(512) 482-5028 (Alsup Fax)
(512) 482-5091 (Hallmark Fax)

**THOMPSON & KNIGHT LLP**
Timothy R. McCormick
Texas Bar No. 13463500
timothy.mccormick@tklaw.com
Michael W. Stockham
Texas Bar No. 24038074
michael.stockham@tklaw.com
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)

**ATTORNEYS FOR APPELLANTS THE BRIGHAM DEFENDANTS**

***Oral Argument Requested***

## IDENTITY OF PARTIES AND COUNSEL

| Appellants | Counsel for Appellants |
|---|---|
| Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen C. Hurley, Stephen P. Reynolds, Hobart A. Smith, and Scott W. Tinker | Debora B. Alsup<br>Ben Hallmark<br>THOMPSON & KNIGHT LLP<br>98 San Jacinto Blvd., Suite 1900<br>Austin, Texas 78701-4238<br>(512) 469-6100<br>(512) 482-5028 (Alsup Fax)<br>(512) 482-5091 (Hallmark Fax)<br>debora.alsup@tklaw.com<br>benjamin.hallmark@tklaw.com<br><br>Timothy R. McCormick<br>Michael W. Stockham<br>THOMPSON & KNIGHT LLP<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201<br>(214) 969-1700<br>(214) 969-1751 (Facsimile)<br>timothy.mccormick@tklaw.com<br>michael.stockham@tklaw.com |
| Statoil ASA and Fargo Acquisition, Inc. | Russell S. Post<br>Fields Alexander<br>Parth Gejji<br>BECK REDDEN LLP<br>1221 McKinney St., Suite 4500<br>Houston, Texas 77010<br>(713) 951-3700<br>(713) 951-3720 fax<br>rpost@beckredden.com<br>falexander@beckredden.com<br>pgejji@beckredden.com |

Chris R. Cowan
BECK REDDEN LLP
515 Congress Avenue, Suite 1750
Austin, Texas  78701
(512) 708-1000, ext 6402
(512) 708-1002 fax
ccowan@beckredden.com

| **Appellees** | **Counsel for Appellees** |
|---|---|
| Raymond Boytim | Randall J. Baron |
| Hugh Duncan | David T. Wissbrocker |
| | Steven M. Jodlowski |
| | Robbins Geller Rudman & Dowd LLP |
| | 655 West Broadway, Suite 1900 |
| | San Diego, CA  92101-3301 |
| | (619) 231-1058 |
| | (619) 231-7423 fax |
| | |
| | Samuel H. Rudman |
| | Mark S. Reich |
| | Michael G. Capeci |
| | Robbins Geller Rudman & Dowd LLP |
| | 58 South Service Road, Suite 200 |
| | Melville, NY  11747 |
| | (631) 367-7100 |
| | (631) 367-1173 fax |
| | srudman@rgrdlaw.com |
| | mreich@rgrdlaw.com |
| | mcapeci@rgrdlaw.com |
| | |
| | Michael D. Marin |
| | Boulette Golden & Marin LLP |
| | 2801 Via Fortuna, Suite 530 |
| | Austin, Texas 78746 |
| | (512) 732-8924 |
| | (512) 732-8905 fax |
| | mmarin@boulettegolden.com |

Walter Schwimmer

Evan J. Smith
Marc L. Ackerman
Brodsky & Smith, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, Pennsylvania 19004
(610) 667-6200
(610) 667-9029 fax
esmith@brodsky-smith.com
mackerman@brodsky-smith.com

Michael Ohler
Ryan Ohler
Walter Ohler, Jr.

Hamilton Lindley
Dunnam & Dunnam L.L.P.
4125 W. Waco Drive  76710
P.O. Box 8418
Waco, Texas 76714
(254) 753-6437
(254) 753-7434 fax
hlindley@dunnamlaw.com

The Edward J. Goodman Life
Income Trust
and
The Edward J. Goodman
Generation Skipping Trust

Shane T. Rowley
Levi & Korsinsky LLP
Shane T. Rowley
30 Broad St., 24th Floor
New York, NY 10004
(212) 363-7500 x127
(866) 367-6510 fax
srowley@zlk.com

Denis F. Sheils
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
(215) 238-1700
(215) 238-1968 fax
dsheils@kohnswift.com

Hugh Duncan

Joe Kendall
Daniel Hill
Jamie J. McKey
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
(215) 238-1700
(215) 238-1968 fax
dsheils@kohnswift.com

Robert Fioravanti

Katharine M. Ryan
Richard A. Maniskas
Ryan & Maniskas, LLP
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516
(484) 450-2582 fax
kryan@rmclasslaw.com
rmaniskas@rmclasslaw.com

Kelly N. Reddell
The Reddell Firm PLLC
100 Highland Park Village, Suite 200
Dallas, Texas 75205
(214) 295-3031
kelly@reddell-law.com

Raymond Boytim

Willie C. Briscoe
The Briscoe Law Firm, PLLC
The Preston Commons
8150 N. Central Expwy., Suite 1575
Dallas, Texas 75206
(214) 239-4568
(281) 254-7789 fax
wbriscoe@thebriscoelawfirm.com

Howard Weissberg
Jeffrey Whalen

Patricia C. Weiser
James M. Ficaro
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
(610) 225-2677
(610) 408-8062 fax
pw@weiserlawfirm.com
jmf@weiserlawfirm.com

## REQUEST FOR ORAL ARGUMENT

Under Texas Rule of Appellate Procedure 39.1, Appellants, the Brigham Defendants, respectfully request oral argument. Oral argument will assist this Court in determining the legal issues in this complex appeal.

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ........................................................i

REQUEST FOR ORAL ARGUMENT ........................................................vi

TABLE OF AUTHORITIES ........................................................x

STATEMENT OF CASE ........................................................xvi

ISSUES PRESENTED........................................................ xviii

STATEMENT OF FACTS ........................................................1

    A.    Brigham's volatile stock price history was tied to the price of oil. ........................................................1

    B.    Brigham's Board agrees to sell Brigham after a yearlong process........................................................2

    C.    Plaintiffs file suit within hours of the transaction announcement. ........................................................3

    D.    Plaintiffs unsuccessfully attempt to enjoin the transaction. ........................................................3

    E.    Following the merger announcement, Brigham's stock is subject to heavy trading volume. ........................................................4

    F.    Brigham's shareholders overwhelmingly support the transaction. ........................................................6

    G.    The trial court erroneously entered a class certification order. ........................................................7

    H.    This Court decertifies the class in *Brigham I*. ........................................................8

    I.    The trial court recertified the class on remand. ........................................................9

STANDARD OF REVIEW ........................................................11

SUMMARY OF THE ARGUMENT ....................................................................12

ARGUMENT AND AUTHORITIES.................................................................15

    I.     The Trial Court Failed to Rigorously Analyze the Certification Requirements under Rule 42 on Remand.............................................15

           A.     The Order and Revised Trial Plan exemplify a "certify now, worry later" approach.......................................................17

           B.     The class definition is both unworkable and invalid. ...............18

    II.    The Trial Plan Remains Legally Deficient..............................................21

           A.     A detailed trial plan is required to demonstrate that the trial court performed a rigorous analysis under Rule 42. .........22

           B.     The Revised Trial Plan does not rigorously analyze how damages will be proven. ...........................................................23

           C.     The Revised Trial Plan does not rigorously analyze the effect of the Defendants' affirmative defenses.........................25

           D.     The Revised Trial Plan fails to account for Defendants' right to request jury findings on proportionate responsibility...................................................................................38

           E.     There is no cause of action in Delaware for breach of the duty of candor. ...........................................................................39

           F.     The Revised Trial Plan misstates the elements of Plaintiffs breach of fiduciary duty claims.................................40

           G.     The Revised Trial Plan fails to address the impact of the Plaintiffs' conflicting damages theories on typicality and predominance...........................................................................41

    III.   This Case Cannot Satisfy the Requirements for Class Certification under Rule 42..........................................................................42

           A.     Named Plaintiffs do not satisfy the typicality requirement because they did not tender their shares. .................................42

B.     Plaintiffs failed to establish that common issues predominate over individual issues..............................................44

C.     The numerosity requirement was not met..................................45

D.     Plaintiffs failed to establish that they are adequate representatives of the absent class members. ...........................46

CONCLUSION AND PRAYER .......................................................................47

CERTIFICATE OF COMPLIANCE .................................................................49

CERTIFICATE OF SERVICE ..........................................................................49

APPENDIX

# TABLE OF AUTHORITIES

## Cases

*1993 GF P'ship v. Simmons & Co. Int'l,*
2010 WL 4514277 (Tex. App.—Houston [14th Dist.]
Nov. 9, 2010, no pet.) (mem. op.).......................................................................19

*All American Life & Casualty Insurance Co. v. Vandeventer,*
2006 WL 742452
(Tex. App.—Fort Worth Mar. 23, 2006, no pet.) (mem. op.) ...........................23

*Allen v. Hines Ranches of Tex., Inc.,*
2003 WL 22908134
(Tex. App.—Austin Dec. 11, 2003, no pet.) (mem. op.)...................................19

*Andra v. Blount,*
772 A.2d 183 (Del. Ch. 2000)...........................................................................43

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988).........................................................................................19

*Bershad v. Curtiss-Wright Corp.,*
535 A.2d 840 (Del. 1987) ............................................................ 20, 25, 30, 43

*Best Buy Co. v. Barrera,*
248 S.W.3d 160 (Tex. 2007)............................................................................37

*Bluelinx Corp. v. Texas Constr. Sys., Inc.,*
363 S.W.3d 623 (Tex. App.—Houston [14th Dist.] 2011, no pet.)...................32

*BMG Direct Marketing, Inc. v. Peake,*
178 S.W.3d 763 (Tex. 2005)......................................................... 23, 30, 32, 37

*Bowden v. Phillips Petroleum Co.,*
247 S.W.3d 690 (Tex. 2008)........................................................... 11, 12, 37

*Brigham Exploration Co. v. Boytim,*
2014 WL 4058965 (Tex. App.—Austin,
Aug. 15, 2014, no pet.) (mem. op.)............................................................ passim

*C&J Energy Servs., Inc. v. City of Miami Gen. Emps.,*
107 A.3d 1049 (Del. 2014) ..............................................................................22

x

*Cameron Appraisal Dist. v. Rourk,*
194 S.W.3d 501 (Tex. 2006) (mem. op.) ................................................37

*Canyon Lake Island Prop. Owners Ass'n. v. Sterling/Suggs Ltd. P'ship.,*
2015 WL 3543125 (Tex. App.—Austin, Jun. 5, 2015, no pet. h.) ............... 23, 45

*Citizens Ins. Co. of Am. v. Daccach,*
217 S.W.3d 430 (Tex. 2007) ................................................................37

*Compaq Computer Corp. v. Lapray,*
135 S.W.3d 657 (Tex. 2004) ................................................................37

*DaimlerChrysler Corp. v. Inman,*
252 S.W.3d 299 (Tex. 2008) ................................................................37

*Enron Oil & Gas Co. v. Joffrion,*
116 S.W.3d 215 (Tex. App.—Tyler 2003, no pet.) .............................................23

*E.V. Slack, Inc. v. Shell Oil Co.,*
969 S.W.2d 565 (Tex. App.—Austin 1998, no pet.) .............................................16

*Exxon Mobil Corp. v. Gill,*
299 S.W.3d 124 (Tex. 2009) ................................................................37

*Farmers Group, Inc. v. Lubin,*
222 S.W.3d 417 (Tex. 2007) ................................................................37

*Ford Motor Co. v. Ocanas,*
138 S.W.3d 447 (Tex. App.—Corpus Christi 2004, no pet.) ............................23

*Ford Motor Co. v. Sheldon,*
22 S.W.3d 444 (Tex. 2000) ................................................................31

*Ford v. Culbertson,*
308 S.W.2d 855 (Tex. 1958) ................................................................ 28, 29

*Gen. Motors Corp. v. Garza,*
179 S.W.3d 76 (Tex. App.—San Antonio 2005, no pet.) ................................23

*General Motors Corp. v. Bloyed,*
916 S.W.2d 949 (Tex. 1996) ................................................................15

*Glencrest Res., LLC v. Ellis,*
    2012 WL 3500324
    (Tex. App.— Fort Worth Aug. 16, 2012, no pet.) (mem. op.) ..................... 11, 12

*Government Employees Insurance Co. v. Patterson,*
    2007 WL 4225504
    (Tex. App.—Corpus Christi Nov. 29, 2007, no pet.) (mem. op.)........................23

*Griffin v. GK Intelligent Sys., Inc.,*
    196 F.R.D. at 298 (S.D. Tex. 2000)....................................................................42

*Heckmann v. Williamson Cnty.,*
    369 S.W.3d 137 (Tex. June 8, 2012) .................................................................37

*Henry Schein, Inc. v. Stromboe,*
    102 S.W.3d 675 (Tex. 2002)..................................................... 11, 15, 23, 26, 37

*Hotels.com, L.P. v. Canales,*
    195 S.W.3d 147 (Tex. App.—San Antonio 2006, no pet.)........................... 23, 42

*In re BJ's Wholesale Club, Inc. S'holders Litig.,*
    2013 WL 396202 (Del. Ch. Jan. 31, 2013)........................................................41

*In re Celera Corp. S'holder Litig.,*
    59 A.3d 418 (Del. 2012) ...................................................................................43

*In re Cornerstone Therapeutics, Inc.,*
    115 A.3d 1173 (Del. 2015) ...............................................................................40

*In Re Prodigy Commc'ns Corp. Shareholders Litig.,*
    2002 WL 1767543 (Del. Ch. Jul. 26, 2002) ......................................................20

*In Re Triarc Cos. Class & Derivative Litig.,*
    791 A.2d 872 (Del. Ch. 2001)............................................................................20

*Intratex Gas Co. v. Beeson,*
    22 S.W.3d 398 (Tex. 2000)................................................................................19

*Issen v. GSC Enters., Inc.,*
    508 F. Supp. 1278 (N.D. Ill. 1981) ...................................................................44

*Janus Capital Grp., Inc. v. First Derivative Traders,*
    131 S. Ct. 2296 (2011)......................................................................................39

*Landon v. Jean-Paul Budinger, Inc.,*
724 S.W.2d 931 (Tex. App.—Austin 1987, no writ)............................................11

*Louisiana-Pacific Corp. v. Andrade,*
19 S.W.3d 245 (Tex. 1999)................................................................................29

*Lubin v. Farmers Grp, Inc.,*
2009 WL 3682602
(Tex. App.—Austin Nov. 6, 2009, no pet.) (mem. op.).......................................36

*Ludlow v. BP,*
---F.3d---, 2015 WL 5235010 (5th Cir. Sept. 8, 2015)................................ 31, 32

*Lyondell Chem. Co. v. Ryan,*
970 A.2d 235 (Del. 2009) ....................................................................... 22, 40, 41

*Malone v. Brincat,*
722 A.2d 5 (Del. 1998) ......................................................................................39

*Malpiede v. Townson,*
780 A.2d 1075 (Del. 2001) ................................................................................39

*McKinney Indep. Sch. Dist. v. Carlisle Grace, Ltd.,*
222 S.W.3d 878 (Tex. App.— Dallas 2007, pet. denied)...................................32

*Monsanto Co. v. Davis,*
97 S.W.3d 642 (Tex. App.—Waco 2002, pet. denied)........................................42

*N. Am. Mort. Co. v. O'Hara,*
153 S.W.3d 43 (Tex. 2004)........................................................................ 23, 37

*N.J. Carpenters Pension Fund v. infoGROUP, Inc.,*
2013 WL 610143 (Del. Ch. Feb. 13, 2013) ......................................................27

*Nat'l W. Life Ins. Co. v. Rowe,*
164 S.W.3d 389 (Tex. 2005)...................................................................... 23, 37

*Nevins v. Bryan,*
885 A.2d 233 (Del. Ch. 2005)...........................................................................29

*Norberg v. Security Storage Co. of Wash.,*
2000 WL 1375868 (Del. Ch. Sept. 19, 2000) ............................................ 20, 30

*Pate v. Elloway,*
  2003 WL 22682422
  (Tex. App.—Houston [1st Dist.] Nov. 13, 2003, pet. denied) (mem. op.)..........36

*Pfeffer v. Redstone,*
  965 A.2d 676 (Del. 2009) ................................................................39

*Phillips Petroleum Co. v. Yarbrough,*
  405 S.W.3d 70 (Tex. 2013)....................................................... 23, 37

*Realty Growth Investors v. Council of Unit Owners,*
  453 A.2d 450 (Del. 1982) ...............................................................27

*Riemer v. State,*
  392 S.W.3d 635 (Tex. 2013)...........................................................37

*Riemer Ex Rel. Themselves v. State,*
  452 S.W.3d 491 (Tex. App.—Amarillo 2014, pet. filed)................................37

*Salsitz v. Peltz,*
  210 F.R.D. 95 (S.D.N.Y. 2002) .......................................................44

*Shapiro v. Pabst Brewing Co.,*
  1985 WL 11578 (Del. Ch. July 30, 1985)..............................................44

*Snyder Commc'ns v. Magaña,*
  142 S.W.3d 295 (Tex. 2004)...........................................................37

*Solomon v. Armstrong,*
  747 A.2d 1098 (Del. Ch. 1999)........................................................27

*Southwestern Ref. Co. v. Bernal,*
  22 S.W.3d 425 (Tex. 2000) .................................................... passim

*Spivak v. Petro-Lewis Corp.,*
  120 F.R.D. 693 (D. Colo. 1987) ......................................................44

*State Farm Mutual Auto. Ins. Co. v. Lopez,*
  156 S.W.3d 550 (Tex. 2004)................................................... passim

*Steinhardt v. Howard–Anderson,*
  2012 WL 29340 (Del. Ch. Jan. 6, 2012)...............................................20

*Stonebridge Life Ins. Co. v. Pitts,*
236 S.W.3d 201 (Tex. 2007) ................................................................37

*Sw. Bell Tel. Co. v. Mktg. On Hold Inc.,*
308 S.W.3d 909 (Tex. 2010) ................................................................37

*Tex. S. Rentals, Inc. v. Gomez,*
267 S.W.3d 228 (Tex. App.—Corpus Christi 2008, no pet.) .............23

*Tex. Workers' Comp. Ins. Facility v. Personnel Servs., Inc.,*
895 S.W.2d 889 (Tex. App.–Austin, 1995, no writ) ..........................29

*Texas Parks & Wildlife Dept. v. Dearing,*
240 S.W.3d 330 (Tex. App.—Austin 2007, pet. denied) ...... 21, 23, 26

*Tracker Marine, L.P. v. Ogle,*
108 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ....23

*Union Pac. Res. Group, Inc. v. Hankins,*
111 S.W.3d 69 (Tex. 2003) ........................................................... 23, 37

*Vila v. BVWebTies LLC,*
2010 WL 3866098 (Del. Ch. Oct. 1, 2010) ........................................27

## Rules and Regulations

TEX. CIV. PRAC. REM. CODE ANN. §§33.002, 33.003 .............................................38

TEX. R. CIV. P. 42(a) ........................................................... 16, 42, 44, 45

TEX. R. CIV. P. 42(b) ........................................................... 16, 22, 45

TEX. R. CIV. P. 42(c) ........................................................... passim

TEX. R. CIV. P. 277 ...............................................................................38

## Additional Authorities

Restatement (Second) of Torts §§ 525, 526 (1977) .................................39

8 DEL. CODE § 262 .....................................................................................4

# STATEMENT OF CASE

| | |
|---|---|
| **Nature of Case:** | This is the second appeal from an order certifying a class action filed by former shareholders of Brigham Exploration Company ("Brigham"). CR4. This Court reversed the first class certification order. *Brigham Exploration Co. v. Boytim*, 2014 WL 4058965 (Tex. App.—Austin, Aug. 15, 2014, no pet.) (mem. op.) ("*Brigham I*"). On remand, the trial court recertified. CR3167. |
| | The dispute concerns Statoil ASA's ("Statoil") 2011 acquisition of Brigham via an all-cash tender offer. CR1941-42. Plaintiffs allege that the tender offer price of $36.50 was too low and that Brigham and Brigham's individual officers and directors (the "Brigham Defendants") breached their fiduciary duties by agreeing to the deal. CR5-8. Plaintiffs attempted to enjoin the transaction, but were unsuccessful. CR305-307. |
| | The trial court entered an order granting class certification on February 27, 2013. CR1191-95. On appeal, this Court reversed, finding that the "trial court's order and the adopted trial plan fail to meaningfully address appellants' pleaded defenses[,]" and that "the trial court abused its discretion by certifying a class without an order complying with the express requirements of Rule 42 and without formulating a trial plan confirming that it has rigorously analyzed the requirements of Rule 42." *Brigham I*, 2014 WL 4058965 at *4. |
| | On remand, the trial court adopted Plaintiffs' revised trial plan and recertified the class on April 9, 2015. CR3163-67. Defendants now appeal the trial court's interlocutory order certifying the class on remand. |
| **Trial Court:** | Order denying temporary injunction signed on November 22, 2011 by the Honorable John K. Dietz, 250th Judicial District Court, Travis County. |
| | Initial class certification order signed on February 27, 2013 by the Honorable Lora Livingston, 261st Judicial District Court, Travis County. |

| | Second class certification order signed on April 9, 2015 by the Honorable Lora Livingston, 261st Judicial District Court, Travis County. |
| --- | --- |
| **Course of Proceedings in Trial Court:** | The trial court signed its Order Granting Class Certification on remand on April 9, 2015. App. A. |

# ISSUES PRESENTED

1.  Did the trial court abuse its discretion in certifying the class without conducting the mandatory rigorous analysis of all certification requirements under Rule 42?

2.  Did the trial court abuse its discretion by adopting a legally deficient revised trial plan that prevents this Court from meaningfully evaluating whether certification of the class conforms with all Rule 42 prerequisites?

3.  Did the trial court abuse its discretion in concluding that individualized issues do not predominate under Rule 42(b)(3), even though Defendants' affirmative defenses will require individualized proof and damages cannot be proven on a class wide basis?

4.  Did the trial court abuse its discretion in concluding that the Named Plaintiffs' claims are typical under Rule 42(a)(3), even though they did not tender their shares, yet 92% of the Brigham shareholders tendered?

# STATEMENT OF FACTS

In *Brigham I*, the first appeal of this class action proceeding, this Court instructed the trial court to conduct the required rigorous analysis under Rule 42 before ruling on class certification. That did not happen on remand. This second appeal challenges the Order certifying a class of former shareholders of Brigham Exploration Company who complain that the purchase price of $36.50 per share paid by Statoil to acquire Brigham in an all-cash tender offer was too low.

## A. Brigham's volatile stock price history was tied to the price of oil.

Ben M. "Bud" Brigham started Brigham in 1990 with $25,000—the entirety of his family's personal savings. CR1274, 1286-87. Nine years later, the company went public, issuing stock at $8 per share.[1] CR143-46, 1277, 1333. From the time it went public in 1997, to the sale to Statoil in December 2011, Brigham's stock had a tumultuous price history in a volatile market tied to the price of oil. CR1333-35, 3SCR547.

Brigham's stock prices continued to be volatile in the period leading up to the sale to Statoil. In the 52 weeks prior to the 2011 sale, Brigham's stock fluctuated between $21 and $37. CR1321. The high lasted for less than a week in the spring of 2011, when oil prices spiked to over $110 a barrel. CR182, 1281,

---

[1] Bud Brigham did not retain a majority interest in Brigham after it went public. At the time of the disputed transaction, he owned less than two percent of the company's common stock. CR2308.

1321. Brigham's stock closed at $30 per share the day before the merger announcement on October 17, 2011; oil was at $86 per barrel at that point. CR185, 197; 3RR15-16, 18. In November 2011, during the tender offer at issue in this case, oil prices were between $95 and $100 a barrel. CR1278-79. As this Court is well aware, oil prices since have plummeted to dramatically low levels. At the time the trial court recertified this class action, oil prices were $50 per barrel, and they have dropped further to about $45 per barrel today. CR216, 3RR18.[2] The last time oil prices were this low, Brigham's stock traded at $2 per share. CR1281-82; 3RR18.

**B.    Brigham's Board agrees to sell Brigham after a yearlong process.**

In 2010, Brigham's Board of Directors undertook a lengthy process to explore a potential sale of the company. 3SCR547. With the help of its financial advisor, Jefferies & Company, Inc., Brigham contacted ten potential buyers to assess their interest. *Id.* The Board held numerous meetings to facilitate the sales process. After ongoing discussions with several potential buyers, Statoil emerged as the only company with the necessary resources and interest to purchase Brigham at a premium. CR1922; CR1925-26. Brigham and Statoil negotiated the transaction and engaged in due diligence for many months. 3SCR547-553.

_____

[2] *See also* BLOOMBERG BUSINESS, http://www.bloomberg.com/quote/CL1:COM (last visited Sept. 28, 2015).

Following these lengthy efforts, the Board voted unanimously to approve the tender offer of $36.50 per share on October 16, 2011. 3SCR1926.

### C. Plaintiffs file suit within hours of the transaction announcement.

The sale of Brigham to Statoil was announced to shareholders the next day, October 17, 2011. Within minutes, law-firm press releases hit the internet trolling for plaintiffs to serve as proposed class representatives. CR1928-1930. The first plaintiff, Raymond Boytim, filed suit within hours of the merger announcement. CR221. He accused all Brigham Board members of "omitting to disclose material financial information" in SEC filings *that were not even filed yet* and would not be filed with the SEC for another eleven days. CR234; CR1471. Ten suits were filed in Texas and in Delaware before Brigham and Statoil even filed their disclosure documents with the SEC. 3SCR571-73.

### D. Plaintiffs unsuccessfully attempt to enjoin the transaction.

Plaintiffs sought to enjoin the transaction based on Brigham's alleged failure to disclose an internal marketing piece created by Jefferies, which suggested that a properly capitalized acquiring company could operate up to 30 drilling rigs with Brigham's assets. Judge Dietz denied the requested injunction, finding that the document was "a marketing tool versus an assessment by the board of directors of the value of the company." CR1378-1381. As he explained, "[T]he record reflects that this was not an assessment by management as to what the present value of

Brigham Oil was, but was rather an attempt to entice Statoil or other buyers that if they had sufficient capital, they could really make a lot of money out of Brigham…." CR1380. Once the injunction was denied on November 22, 2011, the tender offer went forward and the merger transaction closed on December 8, 2011.

> **E.    Following the merger announcement, Brigham's stock is subject to heavy trading volume.**

The transaction was structured as a tender offer, under which shareholders were given the option of tendering their shares to Statoil for $36.50 per share. CR1912, 2260. If more than 90% of the shares were tendered, Statoil could affect a "short-form" merger under Delaware law without the necessity of a shareholder vote. CR1912, 2260. Shareholders thus had an individualized choice: (1) whether to tender their shares prior to the consummation of the merger for $36.50, (2) whether to sell on the open market, or (3) whether to hold until the cash-out merger. CR1280, 1912, 2260. Plus, under Delaware law, dissenting shareholders who were not satisfied with the tender offer price of $36.50 had an additional option. They could seek a judicial appraisal of the fair value of Brigham's shares. CR2245; 8 DEL. CODE § 262. No shareholder requested an appraisal.

This case is unusual in that Brigham's stock had a highly active trading volume following the October 17, 2011 announcement of the transaction with Statoil. Brigham had about 117 million shares outstanding at that time. CR2267,

3164. Plaintiffs' class is defined as the shareholders who held shares on October 17, 2011, (CR3167) but the trading volume shows that on that day, *62 million shares were sold*; i.e. over half of Brigham's outstanding shares changed hands. 4RR DX1. From October 17 to October 28, 2011, when Brigham's Schedule 14D-9 was filed, *133 million shares were sold*. *Id.* As discussed below, the shareholders holding these 133 million shares can have no complaint about allegedly inadequate disclosures in the 14D-9, because it was not even filed with the SEC until eleven days after the class definition cut-off. CR1471. And from October 17, 2011 to the close of the tender offer on December 8, 2011, *255 million shares were traded*. 4RR DX1. The trading volume and stock prices in the aftermath of the announcement is shown in the following chart (4RR DX1):

| Decision Making By Brigham Shareholders | | | | | | |
|---|---|---|---|---|---|---|
| **Brigham Shares Traded in the Open Market (117 Million Shares Outstanding)** | | | | | | |
| Date | Open | High | Low | Close | Volume | Comments |
| 10/14/11 | 29.11 | 30.45 | 28.66 | 30.36 | 2,828,522 | Day before announcement |
| 10/17/11 | 36.44 | 36.78 | 36.30 | 36.75 | 62,364,273 | |
| 10/18/11 | 36.45 | 36.66 | 36.42 | 36.51 | 13,467,649 | |
| 10/19/11 | 36.47 | 36.50 | 36.41 | 36.44 | 15,464,052 | |
| 10/20/11 | 36.44 | 36.59 | 36.42 | 36.57 | 9,783,036 | Shares traded from date merger announced to date of SEC filings. |
| 10/21/11 | 36.55 | 36.55 | 36.47 | 36.54 | 5,529,363 | |
| 10/24/11 | 36.46 | 36.52 | 36.44 | 36.52 | 8,590,596 | |
| 10/25/11 | 36.47 | 36.51 | 36.44 | 36.45 | 5,347,770 | |
| 10/26/11 | 36.48 | 36.59 | 36.45 | 36.52 | 5,231,047 | |
| 10/27/11 | 36.51 | 36.55 | 36.45 | 36.49 | 7,784,417 | 133,562,203 |
| 10/28/11 | 36.44 | 36.49 | 36.40 | 36.49 | 5,891,525 | |
| 10/31/11 | 36.44 | 36.46 | 36.40 | 36.42 | 4,180,024 | |
| 11/01/11 | 36.40 | 36.42 | 36.35 | 36.35 | 9,696,529 | |
| 11/02/11 | 36.40 | 36.42 | 36.35 | 36.37 | 4,774,705 | |
| 11/03/11 | 36.41 | 36.41 | 36.35 | 36.38 | 15,343,570 | |
| 11/04/11 | 36.37 | 36.40 | 36.36 | 36.38 | 3,986,861 | |
| 11/07/11 | 36.39 | 36.39 | 36.34 | 36.36 | 8,859,247 | |
| 11/08/11 | 36.39 | 36.42 | 36.38 | 36.38 | 3,577,350 | |
| 11/09/11 | 36.38 | 36.41 | 36.37 | 36.37 | 3,956,964 | |
| 11/10/11 | 36.40 | 36.42 | 36.37 | 36.42 | 4,585,326 | |
| 11/11/11 | 36.41 | 36.42 | 36.38 | 36.38 | 4,228,857 | |
| 11/14/11 | 36.40 | 36.41 | 36.38 | 36.41 | 3,704,017 | |
| 11/15/11 | 36.41 | 36.50 | 36.39 | 36.44 | 3,970,460 | |
| 11/16/11 | 36.44 | 36.45 | 36.39 | 36.39 | 3,700,637 | |
| 11/17/11 | 36.42 | 36.42 | 36.38 | 36.39 | 6,238,111 | |
| 11/18/11 | 36.40 | 36.42 | 36.40 | 36.40 | 2,100,490 | |
| 11/21/11 | 36.43 | 36.45 | 36.40 | 36.42 | 2,893,699 | |
| 11/22/11 | 36.44 | 36.44 | 36.20 | 36.34 | 11,172,908 | |
| 11/23/11 | 36.39 | 36.39 | 36.39 | 36.39 | 0 | Shares traded from date of SEC filings to close of tender |
| 11/25/11 | 36.40 | 36.42 | 36.39 | 36.39 | 1,688,480 | |
| 11/28/11 | 36.42 | 36.48 | 36.40 | 36.47 | 3,688,000 | |
| 11/29/11 | 36.46 | 36.46 | 36.41 | 36.44 | 3,543,125 | |
| 11/30/11 | 36.47 | 36.48 | 36.43 | 36.43 | 4,703,919 | 116,484,804 |
| Total shares traded between merger announcement and close of initial tender offer | | | | | | 250,047,007 |
| 12/01/11 | 36.48 | 36.50 | 36.48 | 36.48 | 1,295,311 | |
| 12/02/11 | 36.49 | 36.49 | 36.49 | 36.49 | 0 | |
| 12/05/11 | 36.48 | 36.49 | 36.48 | 36.49 | 637,377 | Shares traded in secondary tender offering |
| 12/06/11 | 36.49 | 36.49 | 36.47 | 36.48 | 1,086,150 | |
| 12/07/11 | 36.48 | 36.54 | 36.47 | 36.47 | 2,300,591 | |
| 12/08/11 | 36.48 | 36.48 | 36.48 | 36.48 | 0 | 5,319,429 |
| Grand total of shares traded between merger announcement and close of tender | | | | | | 255,366,436 |

| Brigham Shares Tendered | | |
|---|---|---|
| Tendered between 10/27 and 11/30/2011 | 103,942,665 | Total shares tendered |
| Tendered between 12/01 and 12/08/2011 | 5,454,603 | |
| | | 109,397,268 |

## F. Brigham's shareholders overwhelmingly support the transaction.

Once the merger was announced on October 17, 2011, Brigham's shareholders overwhelmingly supported the deal. By December 8, 2011, shareholders had voluntarily tendered 92.2% of the outstanding shares. CR1941-

43. This allowed Statoil to effect a short-form merger, converting each remaining Brigham share into a right to receive $36.50. This provided shareholders with *a 33% premium over the average market price* of Brigham shares during the 30 days before the deal was announced. CR1320-21; 3SCR553.

Unlike the majority of shareholders they seek to represent, the seven Named Plaintiffs did not voluntarily tender their shares to Statoil, but instead sold their shares on the open market before the merger; and a few held a small amount of their shares through the tender offer period and were automatically cashed out.[3]

### G. The trial court erroneously entered a class certification order.

Plaintiffs' class action petition alleges that the Brigham Board of Directors breached its fiduciary duties by (a) using an unfair method in selling Brigham, (b) agreeing to an unfair price, and (c) failing to disclose material information related to the merger. Plaintiffs also alleged that Brigham and Statoil aided and abetted these breaches. CR5-8. Delaware law controls the substance of these claims because Brigham was incorporated in Delaware.

After a hearing, Judge Livingston issued an order on February 27, 2013 certifying a class defined "as all holders of common stock of Brigham Exploration Company as of October 17, 2011," excluding "defendants and any person, firm,

---

[3] *See* CR2080-81, 2086-88; Boytim Dep. at 85-87 (CR2054); Duncan Dep. at 36 (CR1987); Fioravanti Dep. at 139 (CR1980); Schwimmer Dep. at 40-41 (CR2000-01); Whalen Dep. at 34-35 (CR2020).

trust, corporation or other entity related to or affiliated with any defendant." CR60. Named Plaintiffs were appointed as class representatives, and Robbins Geller Rudman & Dowd LLP was appointed as class counsel. *Id*. The trial court adopted the Plaintiffs' Proposed Trial Plan.

## H. This Court decertifies the class in *Brigham I*.

On appeal to this Court from the first certification order, Defendants raised six points of error, including that the order failed to satisfy the requirements of Rule 42 and that the trial plan was legally deficient in a number of ways. *Brigham Exploration Co. v. Boytim*, 2014 WL 4058965 at *2 (Tex. App.—Austin, Aug. 15, 2014, no pet.) (mem. op.) ("*Brigham I*"). This Court agreed that the trial plan was deficient because it failed to "meaningfully address appellants' pleaded defenses." *Id*. at *4. The Court concluded that "the trial court abused its discretion by certifying a class without an order complying with the express requirements of Rule 42 and "without formulating a trial plan confirming that it has rigorously analyzed the requirements of Rule 42.'" *Id*. (quoting *State Farm Mutual Auto. Ins. Co. v. Lopez,* 156 S.W.3d 550, 557 (Tex. 2004)). Because the trial plan issue was dispositive, this Court did not address the other challenges to the certification order and trial plan, but instead reversed and remanded for further proceedings. *Id*. at *4 & n.2.

## I. The trial court recertified the class on remand.

On remand, Plaintiffs submitted their Second Amended Proposed Plan for Trial of Class Claims on March 19, 2015 (the "Revised Trial Plan"). App. B.[4] The Revised Trial Plan has several additional pages that add the elements of Defendants' affirmative defenses, including a voluntariness element. App. B at p.19. But then it reaches the perfunctory conclusion that all of the defenses "are subject to common proof and will not present manageability problems." App. B at p.17. It proposes essentially the same plan as in *Brigham I.* (Compare App. B to App. C at CR946-54). It has no analysis of the manageability problems created by individualized issues that must be resolved by a fact-finder, and suggests that proportionate responsibility issues "can be resolved through the use of an appropriate jury form." App. B at p.19. Plaintiffs also submitted a proposed class certification order, but advised the trial court that it was "fundamentally the same order the Court signed last time it certified the class with a new date for the trial." 3RR5-6.

The Brigham Defendants and Statoil filed a Joint Opposition. CR119. They argued that the Revised Trial Plan, like the prior version, failed to adequately analyze the affirmative defenses and would be unworkable because the defenses

---

[4] Although requested, the Revised Trial Plan was not initially included in the Clerk's Record. Rather than e-filing it, it was hand-delivered to this Court on June 5, 2015 without Bates numbers. It is attached as App. B.

create individualized issues that would overwhelm any common issues. 3RR17-18, 21; CR131. Indeed, Plaintiffs earlier acknowledged that the affirmative defense of acquiescence would apply to any proposed class member who voluntarily tendered shares, and such shareholders "would not be able to participate in any recovery," but Plaintiffs ignored that problem in the Revised Trial Plan.[5] Defendants also pointed to the exceedingly high trading volume of Brigham stock after October 17, 2011, which made it virtually impossible to prove which shareholders remained after so many shares were sold. Defendants also demonstrated that Plaintiffs' class definition of shareholders on October 17 was unworkable. 3RR19-20; 4RR DX1. Additionally, Defendants argued that members of the purported class would necessarily need to show that they had suffered damages, yet given the historic volatility of Brigham's stock prices as related to the price of oil, $36.50 was an excellent price. 3RR18. And given the plummeting price of oil since the time of the sale to Statoil, Brigham's Board got an excellent price for Brigham's stockholders. *Id*. Most shareholders made a tremendous amount of money, locking in significant profits with an erratic stock in a volatile market. CR1284-85. In fact, one of the Named Plaintiffs sold his stock on the open market for higher than the tender offer price, and had a total gain of

---

[5] *See Brigham I*, No. 03-13-00191-CV, Plaintiffs-Appellees' Brief at 65, 71-72, *available at* *http://www.search.txcourts.gov/Case.aspx?cn=03-13-00191-CV&coa=coa03*.

over $141,000—which he testified was "a very good return" on his investment. CR1980.

Plaintiffs offered no additional evidence to demonstrate that the requirements of Rule 42 were met. 4RR1-3. Judge Livingston recertified the class on April 9, 2015, adopting Plaintiffs' Revised Trial Plan and signing their proposed order (the "Order") without revision. CR 3163, 3166. This second interlocutory appeal followed.

## STANDARD OF REVIEW

Courts review class certification orders under an abuse-of-discretion standard. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008). A court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding principles. *Id.* Thus, an abuse of discretion follows if a trial court acts contrary to law, violates any applicable legal rule, or errs in a manner "affecting the fairness of the proceeding as a whole." *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 936 (Tex. App.—Austin 1987, no writ). The trial court's discretion is especially limited in the class-certification context, and a reviewing court will defer to the trial court only on some determinations, such as witness credibility. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002). Reviewing courts "do not . . . indulge every presumption in the trial court's favor, as compliance with class action requirements must be demonstrated rather than

presumed." *Bowden*, 247 S.W.3d at 696 (emphasis added); *see also Glencrest Res., LLC v. Ellis*, 2012 WL 3500324, at *4 (Tex. App.—Fort Worth Aug. 16, 2012, no pet.) (mem. op.) (noting that the abuse-of-discretion standard is "modified" in the class-certification context because the trial court's discretion is more limited).

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion in re-certifying a class of Brigham shareholders who complain that $36.50 per share was an unfair price for the sale of Brigham to Statoil. Despite this Court's clear instruction in *Brigham I*, the trial court did not perform a rigorous analysis of Rule 42's certification requirements on remand. *See* 2014 WL 4058965 at *4. Instead, the court proceeded as if certification was a foregone conclusion, accepting Plaintiffs' mostly cosmetic changes to the trial plan, and summarily granting recertification. Plaintiffs' Revised Trial Plan again fails to "meaningfully address" Defendants' affirmative defenses, the very error that led to reversal in *Brigham I*. Likewise, the trial court did not address problems with the class definition or with Plaintiffs' proposal for class-wide damages proof.

Had the trial court engaged in the required analysis, it would have recognized that the class remains hopelessly unworkable. The class is defined as all Brigham shareholders as of October 17, 2011, the day that the proposed merger

between Brigham and Statoil was announced. Plaintiffs allege that the Brigham Defendants violated their fiduciary duties and misled shareholders into approving an inadequate price for Brigham's stock. But the SEC filings that allegedly contain the misrepresentations were not even filed until eleven days later, on October 28, 2011. Thus, the class of October 17 shareholders could not have been misled by a filing that had not been made, much less damaged by a merger that had not yet occurred.

In truth, the great majority of Brigham shareholders in Plaintiffs' proposed class willingly sold their shares on the open market prior to the merger. The underlying facts are unusual in that there was incredibly high trading volume as soon as the merger was announced, which continued until the close of the tender offer on December 8, 2011. Over half of Brigham's 117 million outstanding shares traded hands on the day of the merger announcement, which means that by day end over half of the proposed class of "shareholders as of October 17" were no longer shareholders. By November 30, 2011, the close of the initial tender period, 250 million shares—over twice the outstanding Brigham shares—had been sold. This raises the question of how many of the original shareholders on October 17 that are supposed to be part of the putative class, were still shareholders at the time of the final tender. This question has not been answered.

Any trial must necessarily address the reasons why each shareholder sold, or decided to wait and tender their shares to Statoil for $36.50. A shareholder who sold for more than $36.50 will not have any harm or damages, and those who chose to sell for less than the tender offer price will need to explain why. Such evidence is vital to the Defendants' ability to present critical affirmative defenses and would result in an inevitable multitude of mini trials that would swamp the proposed class proceeding. The Revised Trial Plan simply ignores these fundamental problems.

Further, although over 90% of the then-existing Brigham shareholders voluntarily tendered their shares for the approved merger price of $36.50, none of the proposed class representatives tendered. The named Plaintiffs are thus atypical of the vast majority of shareholders they purport to represent, rendering them unfit to serve as class representatives.

For these reasons and others set forth below, the Order certifying the class and incorporating the Revised Trial Plan should be reversed, and judgment should be rendered that under the facts of the underlying case, class certification is unavailable.

**ARGUMENT AND AUTHORITIES**

The trial court certified a class of all shareholders of Brigham stock as of the date the merger with Statoil was announced on October 17, 2011. But each shareholder had an independent reason for deciding to sell on the open market, accepting the tender offer price of $36.50, or holding their shares until they were cashed out. Individual issues will thus predominate any trial, and class-wide proof of the fact and amount of damages will be impossible. Because "class actions are extraordinary proceedings with extraordinary potential for abuse," class certification is not a decision to be taken lightly. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 953 (Tex. 1996); *see also Schein*, 102 S.W.3d at 691. Yet the trial court took the decision to grant recertification lightly here. Insurmountable problems with Plaintiffs' class definition, damages model, and individualized proof were never addressed. This case cannot be certified as a class action, and the Order should be reversed.

**I.    The Trial Court Failed to Rigorously Analyze the Certification Requirements under Rule 42 on Remand.**

Under Texas Rule of Civil Procedure 42(a), a party seeking class certification must first satisfy four threshold requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law, or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

TEX. R. CIV. P. 42(a). App. E.

Once these four prerequisites are met, the party seeking certification must also plead and prove that that the action falls under one of the categories listed in Rule 42(b). *E.V. Slack, Inc. v. Shell Oil Co.*, 969 S.W.2d 565, 567 (Tex. App.—Austin 1998, no pet.). In this case, the trial court certified under Rule 42(b)(3), which required Plaintiffs to demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX. R. CIV. P. 42(b)(3). Plaintiffs also had to define an appropriate class under TEX. R. CIV. P. 42(c)(1)(B) They failed to meet any of these Rule 42 mandates.

Before certifying a class, the trial court must conduct a "rigorous analysis" of all the Rule 42 certification requirements. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). By requiring a trial plan at the time of class certification, the Texas Supreme Court prohibits trial courts from deferring any part of the mandatory rigorous analysis until later in the trial proceedings, and has explicitly rejected a "certify now and worry later" approach. *Id*. at 434-35.

**A. The Order and Revised Trial Plan exemplify a "certify now, worry later" approach**.

In *Brigham I*, this Court found that the "the trial court's order and the adopted trial plan fail to meaningfully address appellants' pleaded defenses," and did not reach the other deficiencies asserted by Defendants. *Brigham I*, 2014 WL 4058965 at *3–*4 & n.1. This Court thus concluded that "the trial court abused its discretion by certifying a class without an order complying with the express requirements of Rule 42 and without formulating a trial plan confirming that it has rigorously analyzed the requirements of Rule 42." *Id.* at *4 (quotations omitted). Consequently, the Court decertified the class and remanded the case. *Id.*

On remand, it was incumbent on the trial court to perform a rigorous analysis of the Rule 42 prerequisites. It failed to do so. In fact, the trial court's initial proposal was to suggest that a revised trial plan could be approved—and the class recertified—without a hearing. 2RR5-7. While the court eventually held a hearing, it was superficial. Plaintiffs offered no additional evidence to support certification and framed the issue as merely adding more detail to the trial plan. They explained the *Brigham I* ruling as: "The Court of Appeals came down to give us a more detailed trial plan. It wasn't to come and review the entire argument on class certification." 3RR7.

But the trial court never conducted a rigorous analysis in connection with the first class certification order, and it didn't do so with the second order either. The

problems with the Order and Revised Trial Plan run deeper than a simple failure to include sufficient "detail" in the trial plan.

**B.** **The class definition is both unworkable and invalid.**

At the outset, this Court should examine the class definition, which is both unworkable and invalid. Plaintiffs have changed their proposed class definition on multiple occasions throughout this litigation.[6] Their most recent definition of "all holders of Brigham common stock as of October 17, 2011" is not a valid class definition either, as required by TEX. R. CIV. P. 42(c)(1)(B). CR3167. This class definition fails for at least four reasons:

*First*, Brigham's extensive trading history shows that *62 million shares were sold the day that the merger was announced*. This means that by the close of business on October 17, the shareholders who previously held over half of Brigham's 117 million outstanding shares had disappeared. *See* "Decision Making by Brigham Shareholders" at page 6 *supra* (4RR DX1). Such purported class members were no longer shareholders on October 17, yet they are included in the class definition. There has been no attempt by Plaintiffs to identify who the selling shareholders are and who was still a holder at day end on October 17, 2011.

---

[6] Plaintiffs have defined the class three different ways. CR327 ("all other stockholders of the Company who have been harmed by defendants' actions as described herein (the 'Class')"); CR375 ("All holders of Brigham common stock as of December 8, 2011, who held their shares through consummation of the acquisition of Brigham by Statoil ASA ("Statoil") at the price of $36.50 per share."); and CR683 ("All holders of Brigham common stock as of October 17, 2011.")

*Second*, the class makes a failure to disclose claim, asserting that Brigham's disclosures about the Statoil transaction in SEC filings made on October 28 (a 14D-9 and Schedule TO) were inadequate. App. B at p.4; CR45. But a class of Brigham shareholders **as of October 17**, cannot have a disclosure claim for disclosures not made until **October 28**. This chronological defect is fatal because it is impossible to be damaged on October 17 by a disclosure that has not yet been made.[7]

*Third*, the proposed class includes shareholders who voluntarily sold shares after October 17, 2011. A properly defined class "insures that those actually harmed by the defendant's wrongful conduct will receive the relief ultimately awarded." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000). The Brigham stock trading records show that from the time of the announcement on October 17, to the close of the tender offer on December 8, 2011, **255 million shares were traded**. Because Brigham had only 117 million shares issued and available to trade in the open market, these sales reflect more than double the amount of the issued shares. CR2267, 3164. In light of the extensive trading

---

[7]  *See Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) (plaintiff must have suffered injury after the representations were made and before the truth was revealed); *Allen v. Hines Ranches of Tex., Inc.*, 2003 WL 22908134, at *4 (Tex. App.—Austin Dec. 11, 2003, no pet.) (holding that fraud does not exist if the misrepresentation occurred after the transaction); *see also 1993 GF P'ship v. Simmons & Co. Int'l*, 2010 WL 4514277, at *7-8 (Tex. App.—Houston [14th Dist.] Nov. 9, 2010, no pet.) (holding that misrepresentations that occurred after the transaction could not form the substance of the claims).

volume, Plaintiffs have not shown how many shareholders of those who held the original 117 million shares on October 17 still held their shares on November 30 in order to claim harm. Any Plaintiff who sold their shares cannot claim damages under Delaware law. *See In Re Triarc Cos. Class & Derivative Litig.,* 791 A.2d 872, 875 (Del. Ch. 2001) ("Selling stockholders who are members of the class have not suffered any damages."); *In Re Prodigy Commc'ns Corp. Shareholders Litig.* 2002 WL 1767543 (Del. Ch. Jul. 26, 2002) ("[m]erely objecting to the fact that the merger happened is not a valid objection.")

**Fourth**, the proposed class definition includes shareholders who accepted the benefit of the merger transaction. This is likewise not permitted under Delaware law. *See e.g., Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840 (Del. 1987); *Steinhardt v. Howard–Anderson*, 2012 WL 29340 at *11 (Del. Ch. Jan. 6, 2012); *Norberg v. Security Storage Co. of Wash.*, 2000 WL 1375868, at *5, 7 (Del. Ch. Sept. 19, 2000). A full 92% of the shareholders voluntarily tendered their shares and accepted the $36.50 price per share.

The trial court never explained how it planned to make Plaintiffs' unworkable class definition workable when trying this case.[8]

---

[8] The Brigham Defendants also respectfully incorporate the arguments set forth in Statoil's appellant's brief that the class definition improperly includes shareholders who lack standing because they apply equally to all defendants.

## II.    The Trial Plan Remains Legally Deficient.

The substantive allegations against the Brigham Defendants are that they allegedly used an unfair method in selling Brigham for an unfair price, and did not disclose material information related to the merger in the 14D-9.  CR5-8.  These complaints are to be analyzed under Delaware substantive law.  However, the class action requirements under Rule 42, including the mandate for a stringent trial plan, are specific to Texas.

The trial plan is not a mere formality; it plays an integral role in appellate review, "allow[ing] a reviewing court to meaningfully evaluate whether certification of the class conforms with all Rule 42 prerequisites." *State Farm*, 156 S.W.3d at 555; *see also Texas Parks & Wildlife Dept. v. Dearing*, 240 S.W.3d 330, 346 (Tex.App.—Austin 2007, pet. denied).  This "meaningful evaluat[ion]" is crucial because a reviewing court will not simply assume that class certification was appropriate.  *See Bernal,* 22 S.W.3d at 435 ("[A]ctual, not presumed, conformance with [Rule 42] remains….indispensable.")

A workable trial plan must include the proper legal framework to demonstrate that the proposed plan meets the requirements of Texas law.  The Revised Trial Plan does not cite the correct Delaware legal precedents that govern

some of the core issues, including issues of liability and the affirmative defenses.[9] It also fails to analyze issues of fact affecting individual class members or describe how such individual issues will be tried and then submitted to the jury for a verdict.

As shown below, the state of mind of each class member will be a controlling fact issue for the jury to resolve on an individual basis. Because the Revised Trial Plan and Order do not describe how this case can be tried with the host of identified individual issues, they fail to meet the requirements of Rules 42(b)(3), 42(b)(3)(D), and 42(c)(1)(D)(iii)-(iv), (vi)-(viii) and reversal should be ordered.

### A. A detailed trial plan is required to demonstrate that the trial court performed a rigorous analysis under Rule 42.

As this Court noted in *Brigham I,* "[A] trial plan is required in every certification order to allow reviewing courts to assure that *all* requirements for certification under Rule 42 have been satisfied." *Brigham I*, 2014 WL 4058965 at *3. A proper trial plan ensures that the court has fulfilled its obligation to perform a "rigorous analysis" of all certification prerequisites under Rule 42. *State Farm*, 156 S.W.3d at 555-56. The trial court must understand the claims, defenses,

---

[9] *See, e.g., C&J Energy Servs., Inc. v. City of Miami Gen. Emps*., 107 A.3d 1049 (Del. 2014) (discussing duties owed by directors during a change of control transaction)*; Lyondell Chem. Co. v. Ryan,* 970 A.2d 235 (Del. 2009) (discussing duties owed by directors and the proper application of an exculpatory provision).

relevant facts, and applicable substantive law to make a meaningful determination of the certification issues. *Id.* "[I]t is improper to certify a class without knowing how the claims can and will likely be tried." *Id.* at 555. Indeed, as this Court did in *Brigham I,* Texas appellate courts regularly reverse trial courts for adopting deficient trial plans in orders granting class certification.[10] In fact, this Court recently reversed a certification order because the trial court failed to rigorously analyze whether Rule 42's requirements were satisfied. *Canyon Lake Island Prop. Owners Ass'n. v. Sterling/Suggs Ltd. P'ship.*, 2015 WL 3543125 (Tex. App.—Austin Jun. 5, 2015, no pet. h.).

### B. The Revised Trial Plan does not rigorously analyze how damages will be proven.

The gravamen of Plaintiffs' complaint is that Brigham was sold for "inadequate consideration." App. B at p.15. Their Revised Trial Plan indicates that they plan to prove their measure of damages through "expert testimony

---

[10] *See, e.g., Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70, 75, 81-82 (Tex. 2013); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 777 (Tex. 2005); *Nat'l W. Life Ins. Co. v. Rowe*, 164 S.W.3d 389, 393 (Tex. 2005); *N. Am. Mortg. Co. v. O'Hara*, 153 S.W.3d 43, 45 (Tex. 2004) (per curiam); *State Farm*, 156 S.W.3d at 557; *Union Pac. Res. Grp, Inc. v. Hankins*, 111 S.W.3d 69, 75 (Tex. 2003); *Henry Schein*, 102 S.W.3d at 689-90; *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 247 (Tex. App.—Corpus Christi 2008, no pet.); *Government Employees Insurance Co. v. Patterson*, 2007 WL 4225504, at *9-10 (Tex. App.—Corpus Christi Nov. 29, 2007, no pet.); *Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 156 (Tex.App.—San Antonio 2006, no pet.); *All American Life & Casualty Insurance Co. v. Vandeventer*, 2006 WL 742452 at *1 (Tex. App.—Fort Worth Mar. 23, 2006, no pet.); *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 84 (Tex. App.—San Antonio 2005, no pet.); *Dearing*, 240 S.W.3d at 361; *Ford Motor Co. v. Ocanas*, 138 S.W.3d 447, 454 (Tex. App.—Corpus Christi 2004, no pet.); *Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 224 (Tex. App.—Tyler 2003, no pet.); *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 363 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

establishing the difference between the true value of the Company and the amount actually received by the shareholders." *Id.* According to the trial plan, this theory of damages can be proven on a class-wide basis because "[t]he amount actually received is the $36.50 that all shareholders received when they either tendered their shares to Statoil or were cashed-out." *Id.*

This proposed class-wide damages proof simply won't work under unique facts of this case. Following the merger announcement, millions of shares were sold by shareholders who elected to sell on the open market. To identify all the different sales prices and the dates of those sales in order to compute damages would be an overwhelming task, given the extensive trading activity. Some of the shares were sold for less than $36.50, and at least some of these shareholders were able to sell their shares for *more* than $36.50 per share. 4RR DX1. Obviously, the latter shareholders were not harmed and cannot be included in the class. Yet the Revised Trial Plan, like its predecessor, ignores these realities.

The Brigham/Statoil merger was structured as a tender offer in which shareholders were not required to tender their shares. They had several options: (i) tendering to Statoil for $36.50, (ii) selling their shares on the open market, (iii) demanding an appraisal of the Brigham stock value (which would require keeping the shares through the merger date), or (iv) waiting to see if the merger would go forward and then being cashed out if it did. As shown, the merger announcement

touched off frenetic trading activity in which millions upon millions of Brigham shares changed hands, with over 133 million traded before Defendants provided the SEC 14D-9 disclosures regarding the transaction, and over 255 million total shares trading up to the close of the tender offer on December 8. Ultimately, over 92% of Brigham shares were voluntarily tendered. CR1941. Given these undisputed facts, the Revised Trial Plan's conclusion that the claims of all shareholders who held stock on October 17, 2011 may be addressed with only common proof is woefully inadequate.

C. **The Revised Trial Plan does not rigorously analyze the effect of the Defendants' affirmative defenses.**

A class action is a procedural device intended to advance judicial economy. *Bernal*, 22 S.W.3d at 437. Defendants have asserted the affirmative defenses of acquiescence, acquiescence in price, ratification, estoppel, and waiver. CR74-75. Under Texas procedural law, Defendants have a right to pursue these defenses, and to inquire into the reasons that so many shareholders decided to sell their shares on the open market, rather than tender them to Statoil. To the extent that shareholders voluntarily accepted the benefits of the merger, or otherwise acquiesced in the price, they may not be entitled to the relief sought by the Named Plaintiffs. *See e.g. Bershad*, at 848. However, the Revised Trial Plan makes no effort to categorize the shareholders based on their actions after the merger announcement. Nor does it explain how the differing circumstances of the various Plaintiffs could

be efficiently managed in a class action. Consequently, the Revised Trial Plan still fails to meaningfully address Defendants' affirmative defenses.

### 1. Defendants have a substantive right to pursue their affirmative defenses.

Before a court can certify a class, it must rigorously analyze how "any issues affecting only individual members, raised by the claims or *defenses* asserted in the pleadings, will be tried in a manageable, time efficient manner." TEX. R. CIV. P. 42(c)(1)(D)(viii) (emphasis added); *see Bernal*, 22 S.W.3d at 436. Indeed, each party must "have the opportunity to adequately and vigorously present any material claims *and defenses*." *Id.* at 437; *Schein*, 102 S.W.3d at 693. It is legal error for the class certification vehicle to diminish a defendant's rights at trial, including its right to offer evidence supporting its affirmative defenses. *See Bernal*, 22 S.W.3d at 437 (holding that the class-action device cannot alter the parties' burden of proof or the substantive prerequisites to a claim or defense).

While the Revised Trial Plan notes the elements of the acquiescence, ratification, estoppel, and waiver defenses, it glosses over the critical question of how these defenses bear on the class-certification analysis under Rule 42. App. B at pp.18-20. *See Dearing*, 240 S.W.3d at 346 ("[D]ispositive issues going to the viability of the class claims should be resolved by the trial court before certification is considered.") In particular, the Revised Trial Plan fails to consider and analyze the individualized nature of these defenses.

Each of the acquiescence, acquiescence in price, ratification, estoppel, and waiver defenses has a distinct intent, knowledge, and voluntariness component, i.e. a state-of-mind element. For example, acquiescence requires that a plaintiff have (1) full knowledge of his rights and material facts; (2) a meaningful choice in determining how to act; and (3) voluntarily acted in a way demonstrating unambiguous approval of the challenged transaction. *N.J. Carpenters Pension Fund v. infoGROUP, Inc.,* 2013 WL 610143, at *7 (Del. Ch. Feb. 13, 2013).

Ratification requires proof that a plaintiff approved a challenged board action after being fully informed of the facts. *See e.g., Solomon v. Armstrong,* 747 A.2d 1098, 1113 n.40 (Del. Ch. 1999). Waiver requires proof that the plaintiff (1) had an existing legal right, (2) which it knew of at the time of the alleged waiver, and (3) that it intended to relinquish that right. *Realty Growth Investors v. Council of Unit Owners,* 453 A.2d 450, 456 (Del. 1982). "[E]stoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded ... from asserting rights which might perhaps have otherwise existed, ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse...." *Vila v. BVWebTies LLC,* 2010 WL 3866098 *10 n.73 (Del. Ch. Oct. 1, 2010).

At trial, to adequately and vigorously present the defenses, Defendants must offer proof of intent, knowledge, or waiver of knowledge. *See e.g., Ford v.*

*Culbertson,* 308 S.W.2d 855, 865 (Tex. 1958); *Tex. Workers' Comp. Ins. Facility v. Personnel Servs., Inc.*, 895 S.W.2d 889, 894 (Tex. App.–Austin, 1995, no writ); *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005). Further, state-of-mind is unique to each putative class member and subject to credibility determinations. *See Bernal,* 22 S.W.3d at 437. And knowledge and intent are subjective considerations. *See Louisiana–Pacific Corp. v. Andrade,* 19 S.W.3d 245, 248 (Tex. 1999) (state of mind element, actual knowledge, is subjective).

None of these defenses can be addressed by class wide proof because they involve individual choices made by the shareholders. In an open, freely-traded market for securities, investors bought and sold Brigham shares for myriad reasons, some unique to, and known only by, each individual investor. Some investors may have needed liquidity or simply intended to sell their stock when it reached a certain price or by a certain date. Other investors may have simply been happy with the price available regardless of any allegations that the share price was insufficient. As shown above, thousands of investors over a fifty-three day period traded 255 million shares of Brigham in the open market for reasons of their own.

The evidence as to why any one investor traded is unique to each investor, and the record will require evidence from the individual investors. In fact, one of the Named Plaintiffs testified that he sold on the open market and did not tender because "I wanted to pursue other investment opportunities." CR1980.

Defendants are entitled to have a jury determine if a particular investor's answer is credible and whether the Defendants' affirmative defenses apply to that specific individual investor. Simply put, the heavy trading of Brigham stock after the parties announced the merger agreement demonstrates that there are unique issues of fact that can only be answered one-by-one by the jury.

### 2. Individual voluntary buy/sell decisions by putative class members make certifying a class impossible and would swamp any trial.

Because Defendants' defenses require an individualized inquiry into the voluntariness of each class member's decision to tender or otherwise sell their shares—assessments that include the shareholders' state of mind—these individualized inquiries preclude class certification under the predominance requirement of Rule 42(b)(3). Although the Revised Trial Plan recognizes the voluntariness element of each of these defenses, it fails to explain how each shareholder's state of mind could be tried on a class-wide basis. App. B at pp.11-21. Waiver, waiver of knowledge, ratification, estoppel, acquiescence in price, and acquiescence would require countless mini-trials to determine, based on the facts and circumstances surrounding each class member's state of mind, whether the class member's tender or sale of shares was voluntary.

Delaware courts have applied the doctrines of waiver and acquiescence in circumstances indistinguishable from this case, decertifying or dismissing such

lawsuits before considering whether a class should be certified because the putative class representatives had voluntarily relinquished known rights. *See Norberg v. Security Storage Co. of Wash.,* 2000 WL 1375868, at *6 (Del. Ch. Sept. 19, 2000) (finding the plaintiff's claims were barred by waiver and acquiescence as a result of accepting the merger consideration after filing a suit that detailed why the majority breached their fiduciary duties); *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840, 840-41 (Del. 1987).

The Texas Supreme Court reached a similar conclusion in *BMG Direct Marketing, Inc. v. Peake,* 178 S.W.3d 763 (Tex. 2005). In that case, the trial court certified a class of music club members who had paid unlawful late fees. *Id*. at 765. Citing *Bernal*'s rejection of the "certify now and worry later" approach, the Texas Supreme Court reversed. Specifically, the Supreme Court was concerned that the trial court failed to analyze the effect of the voluntary payment of the fees by class members on the requirements for class certification. *Id*. at 776-77. Given that the voluntary-payment rule might cause individual issues to predominate, and given that "[i]t is improper to certify a class without knowing how the claims can and will likely be tried," the trial court's certification order was inadequate and required reversal. *Id*. at 777-79. In this case, the voluntary nature of each individual shareholder's sale or tender is also a core issue that precludes certification.

A recent Fifth Circuit decision confirms that individualized considerations underlying an investor's decision to buy or sell a stock can preclude class certification.[11] In *Ludlow v. BP*, the trial court declined to certify a class of shareholders who purchased stock in BP prior to the Deepwater Horizon explosion. ---F.3d---, 2015 WL 5235010 (5th Cir. Sept. 8, 2015). The proposed damages theory for the class was that the pre-spill stock price was inflated as a result of BP's failure to properly disclose the risk of a spill. *Id.* at *9. BP's misstatements, the theory went, led to investors "being defrauded into taking a greater risk than disclosed." *Id.* When the spill occurred, the risk materialized and investors were damaged by the decline in the stock price.[12]

The Fifth Circuit affirmed the trial court's holding that this "materialization of the risk" theory was not capable of class-wide determination. *Id.* at *10. Critically, the theory was based "on a determination that each plaintiff would not have bought BP stock *at all* were it not for the alleged misrepresentations—a determination not derivable as a common question, but rather one requiring individualized inquiry." *Id.* Given that different investors have differing tolerances for risk, some investors might have elected to purchase BP stock even if

---

[11] "[F]ederal decisions and authorities interpreting current federal class action requirements are persuasive in Texas actions." *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000).

[12] The *Ludlow* court affirmed the trial court's certification of a class of post-spill investors. Certification of this class was not challenged on the grounds that individualized issues would predominate. *See id.* at *5-8.

the risk had been properly disclosed. *Id.* The proposed damages model could not be applied uniformly across the class "because it lumps together those who would have bought the stock at the heightened risk with those who would not have." *Id.* at *11.

The same is true here. The law and logic of *Bernal*, *BMG*, and *Ludlow* demonstrate that class certification is improper. A blanket finding as to intent or knowledge would be a complete legal fiction, not a factual determination that could support a jury verdict or a judgment. Indeed, the issues of intent and voluntariness will, by necessity, focus at the level of each individual trade. Defendants have the right to ask each individual shareholder what state-of-mind each had at the time of the sale or sales of their shares and submit controlling issues to a jury. *Bluelinx Corp. v. Texas Constr. Sys., Inc.,* 363 S.W.3d 623, 627 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *McKinney Indep. Sch. Dist. v. Carlisle Grace, Ltd.,* 222 S.W.3d 878, 888 (Tex. App.—Dallas 2007, pet. denied).

Conducting a trial on the intent and knowledge for tens of thousands, if not hundreds of thousands, of trades by Brigham shareholders, is the type of Herculean task that would swamp a single jury. Indeed, the focus of the trial for weeks, if not months or years, would be on presenting evidence and cross-examination related to individual questions raised by the Defendants' properly-asserted affirmative defenses.

### 3. *Bernal* illustrates that class certification cannot ignore individual issues raised in a defendants' defense.

The Texas Supreme Court's decision in *Bernal* emphasizes the following points: (1) class certification cannot restrict the substantive rights of the defendant, and (2) the defendant's choice of how to defend must also be evaluated as a key component the class certification analysis. In *Bernal*, 904 plaintiffs claimed injuries from a single explosion of a refinery tank owned by Southwestern. The trial court certified the class and ordered a three-phase trial. 22 S.W.3d at 429. Phase One would resolve liability and causation as to the named plaintiffs. *Id*. Phase Two would resolve punitive damages, if there had been a finding of gross negligence under Phase One. *Id*. During Phase Three, the jury would "determine whether the individual class members can show sufficient, specific injuries or damages and whether they were proximately caused by …. the tank explosion." *Id*. The Court of Appeals affirmed, holding that the class met all class action prerequisites. *Id*. The Court of Appeals also held that, even though individual issues might predominate in determining causation and damages, "the class was maintainable because the modified trial plan called for the individual issues to be litigated separately from the common issues." *Id*.

The Supreme Court reversed. The Court focused on the right of Southwestern to adequately and vigorously present its defenses. *Id*. at 437-39. It reasoned that "Southwestern is entitled to a fair opportunity to individual

determinations of causation and damages for each of the 904 plaintiffs." *Id*. at 437.

The Court then concluded that if "Southwest chooses to challenge the credibility of and its responsibility for each personal injury claim individually, then what may nominally be a class action initially would degenerate in practice into multiple lawsuits separately tried." *Id*.

**4.    The Revised Trial Plan includes disclosure claims that Plaintiffs earlier explicitly dropped.**

The Revised Trial Plan's only attempt to analyze how the individualized issues presented by Defendants' affirmative defenses would be managed is to assert that "[a]s a practical matter, these defenses merge with the merits of Plaintiffs' non-disclosure claims." App. B at p.19.  But there is nothing for these defenses to "merge" into because Plaintiffs do not have valid non-disclosure claims.  Their class definition precludes such a claim, as discussed above, plus, they dropped non-disclosure claims in prior filings:  "Plaintiffs are not seeking specific monetary recovery for the class on the basis of a non-disclosure claim." CR 1007; *see also* CR1819-23.  The trial court even questioned Plaintiffs about this claim, and they confirmed it was "irrelevant.":

> THE COURT:  Your argument, if I understand it correctly, is that on October 17[th], they get the bad news, that's when they have information that's going to give them heartburn, and whatever they were told 11 days later is irrelevant.
>
> PLAINTIFFS' COUNSEL:  That's correct.

CR1823.  Nonetheless, the Revised Trial Plan still includes a non-disclosure claim:

Here, plaintiffs contend that the Individual Defendants disseminated a Schedule 14D-9 and a tender offer statement on Schedule TO, filed with the Securities and Exchange Commission on October 28, 2011, which was false and misleading and failed to disclose all material information to Brigham shareholders in connection with the tender offer from Statoil.

App. B at p.4.

More broadly, the Revised Trial Plan's conclusory assumption that the disclosure documents cover the field of Defendants' affirmative defenses is erroneous. As noted, the essence of Plaintiffs' claims is not that the disclosures were inadequate, it is that Defendants' failed to obtain adequate consideration for Brigham. Concomitantly, the focus of Defendants affirmative defenses of waiver, acquiescence, acquiescence in prize, ratification, and estoppel is that shareholders agreed to the price they obtained by choosing to sell on the open market or through the Statoil tender offer. The question of whether shareholders voluntarily decided to sell and at what price is not the same as the question of whether the disclosures were adequate. Thus, the Revised Trial Plan's statement that, if Plaintiffs "do not establish that shareholders were misled, plaintiffs' non-disclosure claims fail and defendants are entitled to judgment on that claim, without the need for a separate finding on the defenses" is simply untrue.

**5. Plaintiffs cannot explain how common issues will predominate given the individualized inquiries necessitated by the affirmative defenses.**

Plaintiffs' oft-repeated response to Defendants' complaints is that "these types of cases are routinely certified." 3RR9. Plaintiffs point to their counsel's experience in *Pate v. Elloway*, 2003 WL 22682422, (Tex. App.—Houston [1st Dist.] Nov. 13, 2003, pet. denied) (mem. op.). However, neither the trial plan nor individualized issues were argued as error in *Pate*, those points were uncontested. "[T]he trial court found that the requirements of numerosity, commonality, typicality, predomination of common questions of fact or law, superiority of a class action over other available methods of adjudicating the controversy, and development of a trial plan were uncontested and were satisfied." *Id*. at *2.

Plaintiffs have also pointed to a number of Delaware cases that were certified as class actions. *E.g.,* 1SCR89. The vast majority, however, were settlement class actions, so the threshold issue of whether to certify the class was agreed upon. As this Court has noted, settlement classes are not held to the same standard of proof as litigated classes. *See Lubin v. Farmers Grp, Inc.,* 2009 WL 3682602 at *21 (Tex. App.—Austin Nov. 6, 2009, no pet.). Significantly, Texas procedural law applies to this case, not Delaware law. Texas rejects a 'certify now, worry later' approach, which is acceptable in Delaware. Notably, given the stringent Texas requirements that must be met to certify a class, not a single Texas

Supreme Court opinion has affirmed a challenged class certification order in the last decade.[13]

---

[13] *See Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70, 72 (Tex. 2013) (trial court abused discretion in failing to undertake a rigorous analysis of *res judicata*'s impact on Rule 42 requirements); *Heckmann v. Williamson Cnty.*, 369 S.W.3d 137 (Tex. 2012) (considering class certification tangentially although ruling based on jurisdiction); *Sw. Bell Tel. Co. v. Mktg. On Hold Inc.*, 308 S.W.3d 909, 926–27 (Tex. 2010) (proposed class representative was not adequate because its interests conflicted with those of the absent class members); *Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 129 (Tex. 2009) (vacating certification order and holding that determination was based on trial court's significant misunderstanding of the substantive law); *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 702 (Tex. 2008) (class of royalty owners failed to meet the predominance requirement and individual issues would predominate over common issues); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 306 (Tex. 2008) (named-plaintiffs lacked standing to bring the class action because the possibility of a concrete injury to the named-plaintiffs was extremely remote); *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 163 (Tex. 2007) (class certification was improper because individual issues predominated since defendant was entitled to inquire whether individual class members were aware of a restocking fee and voluntarily agreed to it as they made purchases); *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 (Tex. 2007) (denying certification because individualized inquiries would predominate over common issues); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 460 (Tex. 2007) (decertifying the class and remanding to the trial court for further proceedings); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (holding taxpayers could not bring class action without first exhausting administrative remedies); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 777 (Tex. 2005) (rejecting certification due to the "certify now and worry later" approach resulting from the trial court's failure to analyze the voluntary-payment rule's effect on the predominance requirement); *Nat'l W. Life Ins. Co. v. Rowe*, 164 S.W.3d 389, 392 (Tex. 2005) (trial court failed to perform the necessary rigorous analysis to determine whether the class action requirements were met); *see also N. Am. Mort. Co. v. O'Hara*, 153 S.W.3d 43, 45 (Tex. 2004) (reversing class certification due to error from ordering class certified before trial plan was prepared); *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 557 (Tex. 2004) (reversing certification for failure to reflect the rigorous analysis necessary for typicality and adequate representation requirements); *Snyder Commc'ns v. Magaña*, 142 S.W.3d 295, 301 (Tex. 2004) (reversing certification due to highly individualized issues predominating); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 681 (Tex. 2004) (reversing certification and holding that predominance requirement was not satisfied); *Union Pac. Res. Group, Inc. v. Hankins*, 111 S.W.3d 69, 75 (Tex. 2003) (reversing certification and holding that commonality requirement was not satisfied); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2003) (reversing class certification because individual issues predominated and class action was not superior).

In a few cases, the Supreme Court has remanded for further proceedings to determine if certification is appropriate. *See Riemer v. State*, 392 S.W.3d 635, 642 (Tex. 2013) (error on adequacy issue; remanded to determine whether other Rule 42 requirements were satisfied. On

**D.** **The Revised Trial Plan fails to account for Defendants' right to request jury findings on proportionate responsibility.**

In Texas, a trial court must submit a question apportioning responsibility for harm between the parties. TEX. CIV. PRAC. REM. CODE ANN. §§33.002(a)(1); 33.003(a)l; Tex. R. Civ. P. 277. As shown above, millions of Brigham shares changed hands for reasons known only to individual traders. Shareholders who chose to sell in the open market (or unspecified others who advised them to sell) are potentially responsible for all or part of any alleged harm. A jury must decide that proportion. To submit thousands of proportionate responsibility questions would swamp the jury and make the trial unmanageable.

The Revised Trial Plan fails to rigorously analyze this issue as well. Instead, it suggests only that proportionate responsibility "can be resolved through use of an appropriate jury form." App. B at 20. This says nothing. It does not explain how the use of a "jury form" could adequately address proportionate responsibility on a class-wide basis given that each individual shareholder engaged in a unique course of conduct, based on individualized considerations, with respect to their Brigham shares.

---

remand, certification was denied. 452 S.W.3d 491, 502 (Tex. App.—Amarillo 2014, pet. filed)). *See also Farmers Group, Inc. v. Lubin*, 222 S.W.3d 417 (Tex. 2007) (in class action brought by attorney general under the Insurance Code, the class certification requirements should be applied to the claims asserted, not to the Attorney General himself, and remanding for further proceedings).

**E.** **There is no cause of action in Delaware for breach of the duty of candor**.

The Order also includes a claim against the Brigham Defendants for breach of the duty of candor for "failing to disclose all material information to Brigham shareholders." CR3164-65. This claim allegedly stems from the Brigham Defendants "disseminat[ing]" the Transaction Disclosure Documents filed with the SEC on October 28, 2011. App. B at p.4. [14]

But Delaware law does not permit Plaintiffs to allege a separate claim for a breach of the duty of candor. Rather, candor is a facet of the duty of care and the duty of loyalty. *See Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009) ("[T]he duty of disclosure is not an independent duty, but derives from the duties of care and loyalty."); *see also Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del. 2001); *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998). The certification order thus includes a nonexistent legal claim and further demonstrates the lack of rigor in the trial court's Rule 42 analysis. *State Farm*, 156 S.W.3d at 555-56 (trial court must understand the claims and applicable substantive law).

---

[14] The Revised Trial plan also states that Plaintiffs have a claim against the Brigham Defendants on the basis of alleged nondisclosures from the Schedule TO. App. B at pp.3-4. The Schedule TO was authored by Statoil and was a communication by Statoil and Fargo Acquisition, Inc. to Brigham Shareholders. CR1937. It included no recommendations from the Brigham Defendants on behalf of Brigham. *Id.* Only the "maker" of an allegedly misleading disclosure can be held liable for that disclosure. *Cf. Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301-03 (2011); *see also* Restatement (Second) of Torts §§ 525, 526 (1977) (imposing liability on one who "makes" a misrepresentation).

**F.** **The Revised Trial Plan misstates the elements of Plaintiffs breach of fiduciary duty claims.**

The Revised Trial Plan also misstates and omits elements of Plaintiffs' breach of fiduciary duty claims. *See* TEX. R. CIV. P. 42(c)(1)(D)(i) (order must contain "the elements of each claim or defense asserted in the pleadings"); *see also* CR1236; CR127-28 (lodging this objection with the trial court).

First, it improperly includes a claim by Plaintiffs for breach of the duty of care. This claim fails as a matter of law because the exculpatory provision in Brigham's Certificate of Incorporation (authorized by chapter 8, section 102(b)(7) of the Delaware Code) bars Plaintiffs' claims for monetary liability for breach of the duty of care. *See Ryan*, 970 A.2d at 239; *see also In re Cornerstone Therapeutics, Inc.*, 115 A.3d 1173, 1179 (Del. 2015) (holding that "plaintiffs must plead a non-exculpated claim for breach of fiduciary duty against an independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit"). Thus, the trial plan incorrectly states which claims will be available to Plaintiffs under Delaware law.

Second, the trial plan omits a crucial element of Plaintiffs' claim for breach of the duty of loyalty. To establish this breach under Delaware law, Plaintiffs must show that the Brigham Board members acted in bad faith. *Ryan*, 970 A.2d at 243. And to show bad faith, Plaintiffs must prove that the Board members intentionally used a sales process they knew was not designed to obtain the highest price

reasonably available. *Id.; see also In re BJ's Wholesale Club, Inc. S'holders Litig.,* No. 6623-VCN, 2013 WL 396202, at *7 (Del. Ch. Jan. 31, 2013). The trial plan omits this bad-faith requirement.[15]

> **G.** **The Revised Trial Plan fails to address the impact of the Plaintiffs' conflicting damages theories on typicality and predominance.**

The trial plan also fails to recognize that Plaintiffs have offered conflicting damages theories. *See* Tex. R. Civ. P. 42(c)(1)(D)(iii). Plaintiffs have inconsistently argued that (a) damages are based on what each class member "actually received either in the open market or via tender;" and (b) damages can be calculated "without the need to resort to information collected from individual Class members" CR 1002; App. B at p.8. Yet proof of what each class member received is an individualized inquiry. As noted, this case is unique because millions of shares changed hands in the aftermath of the merger announcement— some shareholders chose to accept less than $36.50 when they sold in the open market, and many received more than $36.50 per share. 4RR DX1. The Revised Trial Plan simply has no answer for how damages will be determined on a class wide basis given these undisputed facts, destroying the predominance element.

---

[15] The Order also makes improper factual findings about Defendants' alleged conduct. It says Plaintiffs have "demonstrated that each member of the [Proposed] Class is the victim of a common course of conduct engaged in by defendants." CR3166. This finding lacks any support in the record whatsoever. *See* CR1235; CR127-28 (lodging this objection).

Also, because the Named Plaintiffs are not in the same position as most of the putative class, the typicality element is lacking, as discussed below.

## III. This Case Cannot Satisfy the Requirements for Class Certification under Rule 42.

There is no implicit right to proceed as a class action, and the Plaintiffs bear the burden of establishing that all of the requirements set forth in Rule 42 are satisfied. *See Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 153 (Tex. App.—San Antonio 2006, no pet.). Plaintiffs failed to meet this burden. The proposed class is not certifiable under the numerosity, typicality, commonality, or predominance requirements.

### A. Named Plaintiffs do not satisfy the typicality requirement because they did not tender their shares.

The trial court abused its discretion in finding that Named Plaintiffs satisfy the typicality requirement. *See* TEX. R. CIV. P. 42(a)(3). Where a class representative is immune to a defense that may defeat the claims of absent class members, that representative is not typical of the class. *See Monsanto Co. v. Davis*, 97 S.W.3d 642, 645-46 (Tex. App.—Waco 2002, pet. denied) (holding that trial court abused its discretion in certifying class where representatives "are not subject to the same defenses as those of the unnamed plaintiffs"); *accord Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 301 (S.D. Tex. 2000) (finding that class representative was not typical where establishing liability "is a more difficult task"

for absent class members because the named plaintiff, unlike most of the class, could rely on a legal presumption).

The Named Plaintiffs are not typical because, unlike the vast majority of the class, they sold their shares on the open market and did not tender their shares to Statoil. Over 92% of the outstanding shares were tendered to Statoil. CR1941. In contrast, none of Named Plaintiffs tendered all of their shares; rather, they either sold their shares on the open market, or held them through the tender offer period and were automatically cashed out. CR2086-88. Thus, they are not subject to some of Defendants' affirmative defenses. Under the acquiescence doctrine, for example, a shareholder is barred from seeking any recovery if he tenders his shares with all material information concerning the tender offer. *In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 431 (Del. 2012); *Bershad*, 535 A.2d at 848 (Del. 1987).

Numerous courts have held that the disparity between tendering and non-tendering shareholders prevents plaintiffs from satisfying the typicality requirement. *See, e.g., Andra v. Blount*, 772 A.2d 183, 196 (Del. Ch. 2000) (noting that "it might be necessary to limit [a non-tendering stockholder] to representing the non-tendering stockholders who are situated similarly to her….[T]endering stockholders may well be subject to the defense that they are estopped from challenging the fairness of a transaction whose benefits they willingly accepted.");

*Shapiro v. Pabst Brewing Co., No. 7339*, 1985 WL 11578, at *5 (Del. Ch. July 30, 1985) ("[Plaintiff's] claim is atypical of the purported class of non-tendering [stockholders] and, thus, plaintiff is precluded from acting on their behalf.").[16]

### B. Plaintiffs failed to establish that common issues predominate over individual issues.

Rule 42(b)(3)'s predominance requirement is one of the most stringent prerequisites to class certification. *Bernal*, 22 S.W.3d at 433. The test for predominance is not whether common issues outnumber uncommon issues, but "whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Id.* at 434. If resolving individual issues is likely to be an overwhelming task, then common issues do not predominate. *Id.* A class cannot be certified if it is not determinable from the outset that individual issues can be considered in a manageable, time-efficient, and fair manner. *Id*. Relatedly, the commonality requirement of Rule 42(a)(2) cannot be met either if individual issues predominate.

As shown, 92% of the shares were tendered here. At trial, each tendering shareholder will need to be examined individually about their knowledge at the time of the tender to determine whether Defendants' affirmative defenses apply to that shareholder. Further, evaluating whether each shareholder suffered actual

---

[16] *Accord Salsitz v. Peltz*, 210 F.R.D. 95, 98 (S.D.N.Y. 2002); *Spivak v. Petro-Lewis Corp.*, 120 F.R.D. 693, 698 (D. Colo. 1987); *Issen v. GSC Enters., Inc.*, 508 F. Supp. 1278, 1296 (N.D. Ill. 1981).

damages as a result of the merger will be an overwhelming task, as discussed above. These and the other individualized issues previously addressed preclude class certification. *See Bernal*, 22 S.W.3d at 433; see also TEX. R. CIV. P. 42(b)(3). The Order is thus wrong in its statement that "questions of law and fact common to the Class predominate over any questions affecting only individual members." CR3166.

### C. The numerosity requirement was not met.

Plaintiffs also had the burden to proving that the proposed class is so numerous that joinder of all members is impracticable. TEX. R. CIV. P. 42(a)(1). There has been no showing that the shareholders who held shares on the date the transaction was announced (October 17, 2011), still held shares on the date the tender offer closed (December 8, 2011). Thus, while Plaintiffs have proposed a class of "all holders of Brigham common stock as of October 17, 2011," they have made no attempt to identify the shareholders that actually suffered alleged damages from an inadequate sales price of $36.50 per share when they were forced to cash out their shares. Having failed to do so, Plaintiffs have not and cannot make the required numerosity showing. *See Canyon Lake*, 2015 WL 3543125 at *6 (finding that the plaintiffs had not met their numerosity burden where they made only unsupported conclusions that it would be impracticable to join all class members).

**D. Plaintiffs failed to establish that they are adequate representatives of the absent class members.**

Finally, the trial court also abused its discretion in finding that the Named Plaintiffs adequately represent the interests of absent Plaintiffs. The trial court did not specifically address this issue on remand and thus did not modify its prior findings from the initial certification order that Named Plaintiffs are adequate. *Compare* CR58-59 *with* CR3165-66.

However, Named Plaintiffs are inadequate because they have failed to take an active role in monitoring the litigation and lack sufficient knowledge of the case. For example, one of the Named Plaintiffs testified that she believed that the lawsuit "is about trying to **lower** the stock, the price of the stock." Goodman Dep. at 32-33, 75 (3SCR237-38, 248) (emphasis added)). Another Named Plaintiff testified that he did not know who one of the Brigham Defendants is. Whalen Dep. at 145-146 (3SCR433). Plaintiffs' information came primarily from "Script Memos" prepared by Plaintiffs' Counsel which contained only allegations, but not facts. As a consequence of Named Plaintiffs' lack of knowledge regarding the case, they are unable to make prudent decisions on behalf of absent Plaintiffs and cannot exercise adequate oversight over their counsel. Rather than repeating them here, Defendants incorporate by reference their arguments from *Brigham I* that

Named Plaintiffs are inadequate.[17] They also respectfully incorporate the arguments presented in the Appellants' Brief of Statoil because they apply equally to the Brigham Defendants. The trial court committed reversible error in finding Named Plaintiffs adequate.

## CONCLUSION AND PRAYER

For all the foregoing reasons, the Court should reverse, decertify the class, and render judgment that the class does not, and cannot meet the requirements of Rule 42. Alternatively, the Brigham Defendants pray that this Court reverse the trial court's Order granting class certification, decertify the class, vacate the Revised Trial Plan, and remand for further proceedings. They also request all other relief to which they may be entitled.

---

[17] Defendants incorporate the arguments, authorities, and citations to the record regarding adequacy in their Appellants' Brief in *Brigham I*. *See* No. 03-13-00191-CV, Brief of Appellants, *available at http://www.search.txcourts.gov/Case.aspx?cn=03-13-00191-CV&coa=coa03*

Respectfully submitted,


By: /s/ *Debora B. Alsup*
Debora B. Alsup
State Bar No. 02006200
debora.alsup@tklaw.com

Ben Hallmark
Texas Bar No. 24069865
benjamin.hallmark@tklaw.com

THOMPSON & KNIGHT LLP
98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701
(512) 469-6100
(512) 482-5028 (Alsup Fax)
(512) 482-5091 (Hallmark Fax)

Timothy R. McCormick
State Bar No. 13463500
timothy.mccormick@tklaw.com

Michael W. Stockham
State Bar No. 24038074
michael.stockham@tklaw.com

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Facsimile)

**ATTORNEYS FOR APPELLANTS**
**THE BRIGHAM DEFENDANTS**

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 11,371 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ *Debora B. Alsup*
Debora B. Alsup

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document will be electronically filed using a certified Electronic Filing Service Provider, which will send electronic notification of such filing to the following counsel of record on this the 28th day of September, 2015, or alternatively, a copy will be sent via e-service, facsimile or e-mail, to the following parties.

/s/ *Debora B. Alsup*
Debora B. Alsup

*Counsel for Defendants*

Russell S. Post
Fields Alexander
Parth Gejji
Beck Redden LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010
(713) 951-3700
(713) 951-6220 (Alexander)
(713) 951-3720 fax
rpost@beckredden.com
falexander@beckredden.com
pgejji@beckredden.com

Chris R. Cowan
Beck Redden LLP
515 Congress Avenue, Suite 1750
Austin, Texas 78701
(512) 708-1000, ext 6402
(512) 708-1002 fax
ccowan@beckredden.com

*Class Counsel for Plaintiffs*

Robbins Geller Rudman & Dowd LLP
Randall J. Baron
David T. Wissbroecker
Steven M. Jodlowski
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
(619) 231-1058
(619) 231-7423 fax
randyb@rgrdlaw.com
dwissbroecker@rgdlaw.com
sjodlowski@rgdlaw.com

Robbins Geller Rudman & Dowd LLP
Samuel H. Rudman
Mark S. Reich
Michael G. Capeci
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100
(631) 367-1173 fax
srudman@rgrdlaw.com
mreich@rgrdlaw.com
mcapei@rgrdlaw.com

*Liaison Counsel for Plaintiffs*

Boulette Golden & Marin LLP
Michael Marin
2801 Via Fortuna, Suite 530
Austin, Texas 78746
(512) 732-8924
(512) 732-8905 fax
mmarin@boulettegolden.com

*Additional Counsel for Plaintiffs*

Kendall Law Group, LLP
Joe Kendall
Daniel Hill
Jamie J. McKey
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
(214) 744-3000
(214) 744-3015 fax
jkendall@kendalllawgroup.com
dhill@kendalllawgroup.com
jmckey@kendalllawgroup.com

The Briscoe Law Firm, PLLC
Willie C. Briscoe
The Preston Commons
8150 N. Central Expressway, Suite 1575
Dallas, Texas 75206
(214) 239-4568
(281) 254-7789 fax
wbriscoe@thebriscoelawfirm.com

Dunnam & Dunnam L.L.P.
Hamilton P. Lindley
4125 W. Waco Drive (76710)
P.O. Box 8418
Waco, Texas 76714
(254) 753-6437
(254) 753-7434 fax
hlindley@ dunnamlaw.com

Brodsky & Smith LLC
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 602
Bala Cynwyd, Pennsylvania 19004
(610) 667-6200
(610) 667-9029 fax
esmith@brodsky-smith.com
mackerman@brodsky-smith.com

Levi & Korsinsky, LLP
Shane T. Rowley
30 Broad St., 24th Floor
New York, NY 10004
(212) 363-7500 x127
(866) 367-6510 fax
srowley@zlk.com

Kohn, Swift & Graf, P.C.
Denis F. Sheils
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
(215) 238-1700
(215) 238-1968 fax
dsheils@kohnswift.com

The Weiser Law Firm, P.C.
Patricia C. Weiser
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
(610) 225-2677
(610) 408-8062 fax
pw@weiserlawfirm.com
jmf@weiserlawfirm.com

Ryan & Maniskas, LLP
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516
(484) 450-2582 fax
kryan@rmclasslaw.com
rmaniskas@rmclasslaw.com

Kelly N. Reddell
The Reddell Firm PLLC
100 Highland Park Village, Suite 200
Dallas, Texas 75205
(214) 295-3031
kelly@reddell-law.com

010283 000032 15948485.8

No. 03-15-000248-CV

_____

In the Third Court of Appeals
at Austin, Texas

_____

**BRIGHAM EXPLORATION COMPANY, ET AL,**
**Defendants/Appellants,**

**v.**

**RAYMOND BOYTIM, ET AL,**
**Plaintiffs/Appellees.**

_____

*On Appeal from the 201st Judicial District Court of Travis County, Texas*
*Honorable Lora Livingston, Presiding Judge*
*Cause No. D-1-GN-11-003205*

_____

**APPENDIX**

_____

| | | |
|---|---|---|
| A | Order Granting Class Certification, April 9, 2015 | CR 3163-67 |
| B | Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims, March 19, 2015 | Hand-filed 06/05/15 by district clerk without Bates numbering |
| C | Plaintiffs' Proposed Amended Preliminary Plan for Trial of Class Claims, September 12, 2012 | CR 946-57 |
| D | Order Denying Temporary Injunction, November 22, 2011 | CR 305-07 |
| E | Texas Rule of Civil Procedure 42 | |

**APPENDIX COVER PAGE**



# Appendix A

Filed in The District Court
of Travis County, Texas

APR · 9 2015

At_____4:00___P___M.
Velva L. Price, District Clerk

Cause No. D-1-GN-11-003205
(**Consolidated**)

| | | |
|---|---|---|
| RAYMOND BOYTIM, et al., Individually and<br>on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIGHAM EXPLORATION COMPANY,<br>et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>201st JUDICIAL DISTRICT |

## ORDER GRANTING CLASS CERTIFICATION

Case # D-1-GN-11-003205

003974777

3163

The Court, having considered the papers filed in support of, and in opposition to, plaintiffs' Motion for Class Certification, as well as oral argument thereon, finds as follows, pursuant to Rule 42 of the Texas Rules of Civil Procedure:

1.      The members of the Class, as defined below, are so numerous that joinder of all members is impracticable. Plaintiffs have demonstrated that Brigham had more than 117,318,932 shares of stock outstanding prior to the acquisition of Brigham Exploration Company ("Brigham" or the "Company") by Statoil ASA ("Statoil") (the "Acquisition").

2.      Plaintiffs bring claims against the former members of Brigham's Board of Directors for breach of their fiduciary duties, and a claim against the Company and Statoil for aiding and abetting the Board's breach of fiduciary duties. These claims raise questions of law and fact common to the Class including, *inter alia*, the following:

(a)      whether the former members of the Brigham's Board breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiffs and the other members of the Class in connection with the Acquisition;

(b)      whether the former members of Brigham's Board engaged in a plan and scheme to benefit themselves and/or Statoil at the expense of the members of the Class;

(c)      whether the former members of Brigham's Board breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiffs and the other members of the Class in connection with the Acquisition;

(d)      whether Brigham and/or Statoil aided and abetted the breach of fiduciary duties by the Individual Defendants;

(e)      whether defendants breached any of their other fiduciary duties to plaintiffs and the other members of the Class in connection with the Acquisition, including the duties of

- 1 -

candor, good faith, diligence, honesty and fair dealing by failing to disclose all material information to Brigham shareholders;

(f)      whether defendants erected preclusive barriers to discourage other offers for the Company and its assets; and

(g)      whether plaintiffs and the other members of the Class were damaged as a result of defendants' misconduct.

3.      The claims of Raymond Boytim, Hugh Duncan, Robert Fioravanti, Walter Schwimmer, The Edward J. Goodman Life Income Trust and The Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen and Howard Weissberg (collectively "plaintiffs") are typical of the claims of the Class. Plaintiffs have demonstrated that their claims, as well as those possessed by the Class, arise out of the same course of conduct or events and are based on the same legal theories.

4.      Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs established, through deposition testimony, sworn affidavits, and/or live testimony provided at the class certification hearing, that they: (i) have taken an active role in the prosecution of the action, including communicating regularly with their attorneys, reviewing the documents and deposition testimony of defendants, responding to discovery requested by defendants, independently investigating Brigham and Statoil and the acquisition; (ii) are knowledgeable about the factual and legal issues involved in the case; (iii) understand the procedural history of the case; (iv) have no interests antagonistic to the class; (v) understand their duties to the class and seek to maximize any recovery for the class; (vi) strongly believe in the legitimacy of their grievance; and (vii) are prepared to appear at trial.

5.      Plaintiffs' selected class counsel will adequately represent plaintiffs and the Class and prosecute their claims. Robbins Geller Rudman & Dowd LLP is experienced in the area of securities

- 2 -

litigation and has vigorously prosecuted this case to date. Boulette Golden & Marin L.L.P. is likewise experienced in complex commercial litigation.

6. The questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiffs have demonstrated that each member of the Class is the victim of a common course of conduct engaged in by defendants.

7. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in this action.

(a) Plaintiffs have established that, given the relatively small amount of dollars which may be at issue for many class members, the class action mechanism is the only means by which a claim challenging defendants' actions will ever be adjudicated, that pursuing individual actions would be prohibitively expensive for the vast majority of the Class, especially in light of the potentially small dollar amount of their individual claims, and that Class members' interests are far better served by the class action device than pursuing individual actions; and

(b) Plaintiffs have submitted trial plan which offers a rigorous analysis and a specific explanation of how the class claims are to proceed to trial. After evaluating the plan, the Court finds that a trial in this action will be manageable in that it involves the application of the laws of a single state (Delaware), there are no individual issues to be resolved by the fact-finder, and that the sole individual issue (the amount of shares held by each class member on October 17, 2011) can be resolved through a post-judgment proceeding. The Court hereby adopts and incorporates Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims, filed March 19, 2015.

8. Plaintiffs' Amended Notice of Pendency of Class Action, attached as Exhibit 10 to Plaintiffs' Amended Motion for Class Certification, satisfies Rule 42(c)(2)(B) of the Texas Rules of Civil Procedure. It concisely and clearly states in plain, easily understood language: (i) the nature of

the action; (ii) the definition of the Class certified; (iii) the Class claims, issues and defenses; (iv) that a member of the Class may enter an appearance through counsel if the member so desires; (v) that the judgment, whether favorable or not, will include and bind all members who do not request exclusion by the specified date; (vi) that the court will exclude any members of the Class if they request exclusion; and (vii) when and how a member may be exclude themselves from the Class.

Good cause appearing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' Motion for Class Certification is GRANTED.

2.      The Class is defined as all holders of common stock of Brigham Exploration Company as of October 17, 2011. Excluded from the Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendant.

3.      Plaintiffs are appointed as representatives of the Class.

4.      Robbins Geller Rudman & Dowd LLP is appointed as Class Counsel, and Boulette Golden & Marin L.L.P. is appointed as Liaison Counsel.

5.      The Court approves Plaintiffs' Amended Notice of Pendency of Class Action. Within 30 days, the parties shall meet and confer regarding a proposed plan for dissemination of the notice.

**ORDER**

IT IS SO ORDERED.

DATED: __April 9, 2015__          _____
                                  THE HONORABLE LORA LIVINGSTON

- 4 -

3167

# Appendix B

Cause No. D-1-GN-11-003205
**(Consolidated)**

| | |
|---|---|
| RAYMOND BOYTIM, et al., Individually and on Behalf of All Others Similarly Situated, §§§§ | IN THE DISTRICT COURT OF |
| Plaintiffs, §§ | TRAVIS COUNTY, TEXAS |
| vs. §§ | 261st JUDICIAL DISTRICT |
| BRIGHAM EXPLORATION COMPANY, et al., §§§ | |
| Defendants. §§§ | |

## PLAINTIFFS' PROPOSED SECOND AMENDED PLAN
## FOR TRIAL OF CLASS CLAIMS

**TABLE OF CONTENTS**

Page

I.     PLAINTIFFS' CLAIMS ..................................................................................................2

       A.     Plaintiffs' Claim for Breach of Fiduciary Duty Against the Individual
              Defendants ................................................................................................................3

       B.     Aiding and Abetting Breach of Fiduciary Duty Against Brigham and
              Statoil .......................................................................................................................4

II.    DEFENDANTS' PLEADED DEFENSES .......................................................................5

       A.     Defense Nos. 1 and 9 ................................................................................................6

       B.     Defense No. 2.............................................................................................................6

       C.     Defense Nos. 3, 5-6 ...................................................................................................7

       D.     Defense No. 4.............................................................................................................8

       E.     Defense No. 7.............................................................................................................9

       F.     Defense No. 8.............................................................................................................9

       G.     Defense Nos. 10 and 11 ..........................................................................................10

       H.     Defense No. 12.........................................................................................................11

       I.     Defense No. 13.........................................................................................................12

III.   CLASS ISSUES..............................................................................................................12

       A.     Procedural History ..................................................................................................12

       B.     Common Questions of Law and Fact Predominate .................................................13

              1.     Plaintiffs Will Prove Breach of Fiduciary Duty Through Common
                     Evidence.......................................................................................................14

              2.     Plaintiffs Will Prove with Common Evidence Causation and
                     Amount of Damages ....................................................................................16

              3.     Defendants' Defenses Are Susceptible to Common Proof.........................17

1014363_1

Pursuant to Tex. R. Civ. P. 42(d), this Court hereby adopts the following trial plan in connection with its order granting certification of plaintiffs' claims against defendants. This plan provides a detailed assessment of how a single trial can be conducted against Brigham Exploration Company ("Brigham" or the "Company"), the members of its Board of Directors (the "Individual Defendants" or the "Board"), and Statoil ASA ("Statoil") on behalf of a proposed class of all holders of Brigham common stock as of October 17, 2011. Based upon the voluminous written submissions of the parties in connection with plaintiffs' motion for class certification, as well as hearings held on October 22, 2012, February 22, 2013, December 17, 2014, and March 31, 2015, it is evident to the Court that trial of this action on a class-wide basis will present no unduly challenging manageability issues.

This plan addresses the class certification issues, the claims arising from defendants' actions, the manner in which defendants' common course of conduct will be proven at trial, and other issues relating to the management and superiority of a class-wide trial. As discussed below, this action stems from the sale of Brigham to Statoil for $36.50 per share of Brigham stock. That sale was completed on December 8, 2011, one-and-a-half months after Brigham and Statoil announced to shareholders that the companies had entered into a definitive merger agreement. Plaintiffs allege that Brigham's directors breached their fiduciary duties to shareholders in agreeing to and facilitating the sale. Plaintiffs also bring a claim against Brigham and Statoil for aiding and abetting the breach of fiduciary duty. In response to plaintiffs' claims, defendants have pleaded several defenses, which are addressed below.

The Court envisions a single trial with the following procedural steps:

1.      Plaintiffs will present their case-in-chief, submitting common evidence of defendants' wrongdoing, class-wide injury, and total damages;

2.      The Individual Defendants will present the defenses they wish to advance;

- 1 -

3. Brigham and Statoil will present the defenses they wish to advance;

4. Plaintiffs will present their rebuttal case; and

5. The case will be submitted to the jury, which will enter a verdict based on a proposed jury charge.

Counsel for plaintiffs are deeply experienced in takeover litigation, especially in takeover cases after the acquisition closes, and have prepared similar cases for trial. Counsel for plaintiffs have also tried numerous takeover cases on a class-wide basis, including at least one action in Texas. *See Elloway v. Pate*, 238 S.W.3d 882 (Tex. App.–Houston [14th Dist.] 2007, no pet.). Plaintiffs will present their case through the testimony of their experts; the testimony and documents of the Individual Defendants, Brigham and Statoil; the testimony and documents of defendants' financial advisors; and, potentially, the documents and testimony of Shell, ENI, Chevron and Total, four potential buyers.

If a verdict for the plaintiffs results, judgment in a total, single monetary sum will be entered in favor of the Class. A post-judgment proceeding will follow, in which the Court will approve the procedure for distributing checks (or direct deposits) to each individual Class member based on plaintiffs' expert's damage calculations. Plaintiffs will ask the Court to approve the final allocation of damages. If a verdict is returned in favor of defendants, judgment dismissing the action with prejudice would be entered.

## I. PLAINTIFFS' CLAIMS

This action involves claims against Brigham's Board for breach of its fiduciary duties, and a claim against the Company and Statoil for aiding and abetting the Board's breach of fiduciary duties.

- 2 -

## A. Plaintiffs' Claim for Breach of Fiduciary Duty Against the Individual Defendants

The primary claim in this case is a claim for breach of fiduciary duty against the members of Brigham's Board at the time of the acquisition. That claim is governed by Delaware law because Brigham was a Delaware corporation. Article 8.02 of the Texas Business Corporation Act provides that the internal affairs (including the actions of its Board Members) of a foreign corporation doing business in Texas are controlled by the substantive law of the state of incorporation.

Directors owe fiduciary duties of care and loyalty to the corporation and its shareholders. *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989); *accord Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986). In the context of a change of control, such as this, courts review directors' conduct under the enhanced scrutiny standard and must employ "less tolerance for slack by the directors" and be cognizant of the fact that "[a]lthough the directors have a choice of means, they do not comply with their [fiduciary] duties unless they undertake reasonable steps to get the best deal." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 192 (Del. Ch. 2007); *see also Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003); *Revlon*, 506 A.2d 173. The enhanced scrutiny test requires:

> (a) a judicial determination regarding the adequacy of the decisionmaking process employed by the directors, including the information on which the directors based their decision; and (b) a judicial examination of the reasonableness of the directors' action in light of the circumstances then existing.

*Paramount Commc'ns v. QVC Network*, 637 A.2d 34, 45 (Del. 1994); *Omnicare*, 818 A.2d at 931. Under the enhanced scrutiny test, "[t]he directors have the burden of proving that they were adequately informed and acted reasonably." *Paramount*, 637 A.2d at 45.

In addition, as part of their fiduciary duties to Brigham's shareholders, the Board must fully and fairly disclose all material information within the Board's control. *See Netsmart*, 924 A.2d at 202; *In re Pure Resources, Inc., S'holders Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002) ("When a document ventures

- 3 -

1014363_1

into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts."). Here, plaintiffs contend that the Individual Defendants disseminated a Schedule 14D-9 ("Schedule 14D-9") and a tender offer statement on Schedule TO ("Schedule TO"), filed with the Securities and Exchange Commission on October 28, 2011, which was false and misleading and failed to disclose all material information to Brigham shareholders in connection with the tender offer from Statoil. The determination of whether the Board breached that duty in this instance turns on the materiality of the alleged non-disclosures and omissions. Under relevant case law, courts determine materiality by assessing whether there is a substantial likelihood that a reasonable shareholder would consider the fact important in deciding how to vote. *See Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1277 (Del. 1994); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

## B. Aiding and Abetting Breach of Fiduciary Duty Against Brigham and Statoil

Plaintiffs also have a claim against Brigham and Statoil, for aiding and abetting of the breaches of fiduciary duties by the Individual Defendants, as members of the Board of Brigham. *Rand v. Western Airlines*, No. 8632, 1989 Del. Ch. LEXIS 118, at *14 (Del. Ch. Sept. 11, 1989) ("[I]f there were objective evidence that the transaction benefits the fiduciaries at the stockholders' expense, knowing participation by a third party might be inferable."). To prevail on their claim for aiding and abetting a breach of fiduciary duty, plaintiffs must prove: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by Statoil; and (4) damages proximately caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001); *In re Rural Metro Corp. S'holders Litig.*, 88 A.3d 54, 80 (Del. 2014). As to the third element – knowing participation, plaintiffs must show that the buyout group "'sought to induce the breach of a fiduciary duty'" or "'make factual allegations from which knowing participation may be inferred.'" *In re Bj's Wholesale Club, Inc.*, C.A. No. 6623-VCN, 2013 Del. Ch. LEXIS 28, at *54-

- 4 -

*55 (Del. Ch. Jan. 31, 2013). Knowing participation may be inferred where a buyout group: (1) "directly 'sought to induce [a] breach of fiduciary duty'" by the board; (2) attempted to "'create or exploit conflicts of interest in the board'"; (3) "'used knowledge of the breach to gain a bargaining advantage in negotiations'" with the board; or (4) knew the "'terms of the transaction [were] so egregious or the magnitude of the side deals . . . so excessive as to be inherently wrongful.'" *Id.*

## II. DEFENDANTS' PLEADED DEFENSES

On January 13, 2015, defendants filed a Third Amended Answer to plaintiffs' petition. In it, defendants plead the following defenses:

1. Plaintiffs' petition fails to state a claim for which relief can be granted;

2. The negotiation and process leading up to the signing of the merger agreement and tender offer, as well as the decision to recommend the tender offer by the Individual Defendants, are protected by the business judgment rule;

3. Defendants did not know, and in the exercise of reasonable care could not have known, of any untruths or omissions in the Schedule 14D-9 or the Schedule TO;

4. The alleged misrepresentations and omissions were not material and did not proximately cause any damages to plaintiffs;

5. Defendants acted in good faith and without any intent to deceive;

6. Defendants' alleged misstatements or omissions were made in good faith, with genuine belief;

7. Pursuant to 8 Del C. §141(e), defendants are not liable because they relied in good faith upon the records of the corporation;

8. Plaintiffs' claims are barred because of payment or accord and satisfaction;

- 5 -

9.      Plaintiffs' generalized allegations of purported misrepresentations, deceit, or failure to disclose are barred because of a failure to plead those claims with requisite specificity;

10.     Plaintiffs' claims for damages are barred as a matter of law;

11.     Plaintiffs' claims are barred under the 8 Del. C. §102(b)(7) exculpation clause in Brigham's Certificate of Incorporation;

12.     Plaintiffs' claims are barred by the doctrines of waiver, acquiescence, acquiescence in price, ratification, and estoppel; and

13.     The recovery by plaintiffs, if any, should be precluded or reduced by virtue of the doctrine of proportionate responsibility.

## A.      Defense Nos. 1 and 9

Defendants' first and ninth defenses are directed at the sufficiency of plaintiffs' pleadings, which is a legal matter for the Court. Texas follows a "fair notice" standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000); *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *see also* Tex. R. Civ. P. 47(a). The test of fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him or her, could ascertain the nature and basic issues of the controversy and the testimony that is probably relevant. *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 489 (Tex. App.–Houston [14th Dist.] 1994, writ denied).

## B.      Defense No. 2

In their second defense, defendants contend that the business judgment rule bars plaintiffs' claims.

- 6 -

The business judgment rule is an evidentiary presumption. *Cede & Co. v. Technicolor*, 634 A.2d 345, 360 (Del. 1993). Where shareholders challenge transactions approved by the board of a corporation, the business judgment rule operates as "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). A shareholder plaintiff may rebut the presumption by showing that a defendant breached any one of the triads of their fiduciary duty - good faith, loyalty or due care. *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del. 1989). If the plaintiff makes this evidentiary showing, the presumption is rebutted and the burden shifts to the defendant directors, the proponents of the challenged transaction, to prove to the trier of fact the "entire fairness" of the transaction to the shareholder plaintiff. *Nixon v. Blackwell*, 626 A.2d 1366, 1376 (Del. 1993).

## C.     Defense Nos. 3, 5-6

Defendants have raised three defenses alleging that they acted in good faith and without any intent to deceive Brigham's shareholders.

The duty to act in good faith is technically a subset of the duty of loyalty. "Encompassed within the duty of loyalty is a good faith aspect as well. 'To act in good faith, a director must act at all times with an honesty of purpose and in the best interest and welfare of the corporation.'" *Shocking Techs., Inc. v. Kosowsky*, No. 7164-VCN, 2012 Del. Ch. LEXIS 224, at *29 (Del. Ch. Sept. 28, 2012) (citation omitted). Stated alternatively, a director who acts "reckless and indifferent as to the rights of the stockholders" may breach the duty of good faith. *Perrine v. Pennroad Corp.*, 47 A.2d 479, 489 (Del. Ch. 1946) (citing *Karasik v. Pacific Eastern Corp.*, 180 A. 604 (Del. Ch. 1935)).

With respect to the defense that defendants did not know, or could not have known, of any untruths or omissions in the Schedule 14D-9 or Schedule TO, directors of a Delaware corporation

- 7 -

are under a fiduciary duty to disclose all material information within the Board's control when they seek shareholder action. *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992); *Arnold*, 650 A.2d at 1277. "The disclosure obligation . . . is said to be one that requires the disclosure of all material information within the knowledge of the corporation (and thus available to the directors)." *Behrens v. United Investors Mgmt. Co.*, No. 12876, 1993 Del. Ch. LEXIS 217, at *42 (Del. Ch. Oct. 1, 1993).

## D.     Defense No. 4

In their fourth defense, defendants assert that the alleged misrepresentations and omissions are not material and did not proximately cause damages or injuries to plaintiffs.

The Delaware Supreme Court has stated that the essential inquiry in analyzing a disclosure claim is whether the alleged omission or misrepresentation is material. *Arnold*, 650 A.2d at 1277. The objective definition of materiality employed by Delaware courts is adopted from the United States Supreme Court's decision in *TSC*, 426 U.S. 438, which states, in pertinent part:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote . . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Id.* at 449.

Under Delaware law, once materiality has been shown, causation is satisfied. In *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54 (Del. Ch. 2014), the Court of Chancery held that, "[w]hen seeking post-closing damages for breach of the duty of disclosure, however, the plaintiff must prove quantifiable damages that are 'logically and reasonably related to the harm or injury for which compensation is being awarded.'" *Id.* at 104 (citing *In re J.P. Morgan Chase & Co. S'holder*

- 8 -

*Litig.*, 906 A.2d 766, 773 (Del. 2006)). There, the court explained, "a [financial advisor's] actions resulted in stockholders voting on the merger based on a proxy statement that contained materially false disclosures and omissions about [financial advisor's] valuation analyses and conflicts. Stockholders were denied the information necessary to make an informed decision whether to seek appraisal. Causation is satisfied." *Rural Metro*, 88 A.3d at 107. In a later opinion, the court entered judgment and awarded damages to the stockholder class at an identical $4.17 per share for the plaintiff and each eligible class member. *In re Rural/Metro Corp. Stockholders Litig.*, 102 A.3d 205 (Del. Ch. 2014). The showing of causation involved no individual issues of proof.

## E.     Defense No. 7

Defendants also invoke §141(e) of Delaware's corporation law, 8 Del. C. §141(e), as a defense. Section 141(e) provides that directors are protected from a breach of the duty of care when the directors reasonably believe the information upon which they rely has been presented by an expert selected with reasonable care and is within that person's professional or expert competence. 8 Del. C. §141(e); *see also Brehm v. Eisner*, 746 A.2d 244, 262 (Del. 2000).

Section 141(e) does not reach claims for breaches of loyalty and good faith. *See, e.g., Selectica, Inc. v. Versata Enters.*, No. 4241-VCN, 2010 Del. Ch. LEXIS 39, at *62 (Del. Ch. Feb. 26, 2010) (recognizing that board's reliance on expert's advice may, in certain circumstances, defeat a "due care claim"), *aff'd*, 5 A.3d 586 (Del. 2010).

## F.     Defense No. 8

In their eighth defense, defendants contend that plaintiffs' claims are barred because of payment or accord and satisfaction. Three elements are necessary to prove an accord and satisfaction: (1) that a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) that the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full

- 9 -

satisfaction of the debt. *CitiSteel USA, Inc. v. Connell Ltd. P'shp, Luria Bros. Div.*, 758 A.2d 928, 931 (Del. 2000) (citing *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068 (Del. 1997)). The burden to prove these elements is on the party alleging that the accord and satisfaction took place. *Id.* at 1068-69.

## G. Defense Nos. 10 and 11

Defendants also contend that plaintiffs' claims for monetary damages are barred as a matter of law and under the 8 Del. C. §102(b)(7) exculpation clause in Brigham's Certificate of Incorporation. Although §102(b)(7) provision does not operate to defeat the validity of a plaintiff's claim on the merits, it permits a corporation to adopt a clause eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except in certain circumstances. *Emerald Partners v. Berlin*, 787 A.2d 85, 92 (Del. 2001).

Section 102(b)(7) applies only to directors; it does not authorize exculpation of officers. *Chen v. Howard-Anderson*, 87 A.3d 648, 686 (Del. Ch. 2014); *McPadden v. Sidhu*, 964 A.2d 1262, 1275-76 (Del. Ch. 2008). Nor does §102(b)(7) shield a corporation from monetary damages stemming from the actions of its directors or officers. 8 Del. C. §102(b)(7).

A §102(b)(7) exculpation clause also cannot eliminate or limit the liability of a director for any breach of the duty of loyalty or good faith, including a claim for non-disclosure. 8 Del. C. §102(b)(7); *accord Levy v. Stern*, No. 211, 1996 Del. LEXIS 468, at *6 n.4 (Del. Dec. 20, 1996) (§102(b)(7) "is inapplicable . . . where the alleged breach entails bad faith, intentional misconduct, or a breach of the duty of loyalty"); *Wayne Cnty. Emps.' Ret. Sys. v. Corti*, No. 3534-CC, 2009 Del. Ch. LEXIS 126, at *25-*28 (Del. Ch. July 24, 2009), *aff'd*, 996 A.2d 795 (Del. 2010).

- 10 -

"Because [§ 102(b)(7)] is an affirmative defense, the defendants would normally shoulder the burden of establishing each of its elements, and the inapplicability of each of its four exceptions." *Rothenberg v. Santa Fe Pacific Corp.*, No. 11749, 1992 Del. Ch. LEXIS 106, at *12-*13 (Del. Ch. May 18, 1992); *In re Orchard Enters., Inc.*, 88 A.3d 1, 48 (Del. Ch. 2014).

## H. Defense No. 12

Defendants' twelfth defense raises four related doctrines of equity – waiver, acquiescence, ratification and estoppel – all of which defendants bear the burden of proving under Delaware law.

"'Waiver is the voluntary and intentional relinquishment of a known right. . . . It implies knowledge of all material facts and intent to waive.' Moreover, 'the facts relied upon must be unequivocal in nature.'" *Am. Family Mortg. Corp. v. Acierno*, No. 290, 1994 Del. LEXIS 105, at *13 (Del. Mar. 28, 1994) (quoting *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)) (internal citations omitted). To be subject to the defense of acquiescence, defendants must prove every plaintiff: (i) had full knowledge of their rights and all material facts; (ii) possessed a meaningful choice in determining how to act; and (iii) acted voluntarily in a manner showing unequivocal approval of the challenged conduct. *N.J. Carpenters Pension Fund v. infoGROUP, Inc.*, No. 5334-VCN, 2013 Del. Ch. LEXIS 43, at *25 (Del. Ch. Feb. 13, 2013). To obtain the benefits of ratification, the defendants must prove, by a preponderance of the evidence, that the plaintiffs consented to the switch after all material facts were disclosed. *O'Malley v. Boris*, No. 15735-NC, 2002 Del. Ch. LEXIS 33, at *22 n.28 (Del. Ch. Mar. 18, 2002). "[T]he ratification doctrine does not apply to transactions where shareholder approval is statutorily required." *Gantler v. Stephens*, 965 A.2d 695, 714 (Del. 2009). "'Estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and

- 11 -

1014363_1

has been led thereby to change his position for the worse.'" *Kahn v. Household Acquisition Corp.*, 591 A.2d 166, 176 (Del. 1991).

## I.      Defense No. 13

Defendants' last defense is based on the doctrine of proportionate responsibility. Under Chapter 33 of the Texas Civil Practice and Remedies Code, if a liability finding has been made by the jury, the jury may be asked to determine if other parties contributed to the harm for which damages are sought. Tex. Civ. Prac. & Rem. Code Ann. §33.003(a) (2006). If so, the jury may determine the percentage of responsibility of each party and reduce or eliminate any damages owed to a plaintiff. *Id.*

## III.    CLASS ISSUES

### A.      Procedural History

This action was initiated on October 17, 2011, when Raymond Boytim filed a petition stemming from the announcement by Brigham and Statoil that the companies had entered into a merger agreement. Several additional Brigham shareholders filed similar actions. The actions were thereafter consolidated. On November 10, 2011, plaintiffs moved for an order preventing defendants from closing the tender offer and taking down any tendered shares until defendants cured the breaches of fiduciary duty set forth in plaintiffs' petition. That motion was denied, and Statoil closed the transaction on December 8, 2011.

After the sale was consummated, plaintiffs filed a second amended consolidated petition, which added a claim for damages. Plaintiffs also added factual allegations based on their review of the documents and deposition testimony provided by defendants prior to the close of the transaction. In early March 2012, plaintiffs filed a third amended class action petition for breach of fiduciary duty. The petition added several additional named plaintiffs, but was otherwise identical to the second amended petition filed in January. Discovery is ongoing.

- 12 -

On September 17, 2012, plaintiffs moved for class certification of their claim that defendants had breached their duties to Brigham's shareholders. Both parties have submitted voluminous filings, and the Court has held numerous hearings, in connection with that motion. On October 22, 2012, the trial court held a hearing during which counsel for the parties providing opening statements in support of their respective positions and four class representatives provided live testimony. The Court held a second hearing on February 22, 2013. At that hearing, the Court addressed defendants' objections to the class certification order and proposed trial plan. Five days later, the Court issued an order certifying a class of former Brigham shareholders. An interlocutory appeal followed.

On December 17, 2014, following disposition of defendants' interlocutory appeal, the Court held a hearing to address the development of a revised trial plan which complies with Tex. R. Civ. P. 42. Specifically, the Court explored the various defenses pleaded by defendants and the defenses they expected to pursue at trial, and the Court analyzed the sources of proof defendants will offer in support of these defenses. These issues were further explored through subsequent briefing by the parties and a follow-up hearing held on March 31, 2015.

**B.      Common Questions of Law and Fact Predominate**

Under Rule 42(b)(3) of the Texas Rules of Civil Procedure, the moving party must show that the class should be maintained because common questions of fact or law predominate over any questions affecting only individual members. *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000) (if the moving party seeks to certify a predominance-of-common-questions action, the commonality determination under Rule 42(a) is subsumed under the predominance determination). The test for predominance is whether common or individual issues will be the object of most of the efforts of the litigants and the Court. *Id.* at 434; *Snyder Commc'ns, L.P. v. Magana*, 142 S.W.3d

- 13 -

295, 300 (Tex. 2004) ("In evaluating whether common issues predominate, courts must identify the controlling substantive issues of the case and assess which issues will predominate to determine whether those issues are in fact common to the class. Courts must therefore determine 'whether common or individual issues will be the object of most of the efforts of the litigants and the court.'") (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002)).

For all of their claims, plaintiffs will rely on common proof derived directly from Brigham's directors, officers and executives, and from plaintiffs' expert(s), to prove their claims. Below is an evidentiary outline demonstrating how this case will be tried as a class action without manageability problems.

### 1. Plaintiffs Will Prove Breach of Fiduciary Duty Through Common Evidence

The elements of breach of fiduciary duty are common to each member of the stockholder class. Plaintiffs intend to prove at trial that defendants breached their fiduciary duties to shareholders when they agreed to the sale of Brigham.

To prove their claims, plaintiffs will offer evidence of the defendants' activities found in the contemporaneously created internal Brigham and Statoil documents; testimony from Brigham's directors and officers, and certain of its executives; testimony from Statoil's executives; documents and testimony from Jefferies, the financial advisor retained by the Brigham Board; and documents and testimony from Shell, ENI, Chevron and Total, four other potential buyers of Brigham. Plaintiffs believe that this evidence will show that defendants were acting in their own interests, rather than in the interests of stockholders.

Plaintiffs also allege that the Board disregarded hundreds of millions of dollars in shareholder value represented in the stand-alone plan of the Company, when it agreed to and recommended the tender offer and approved the acquisition. Common evidence of this breach will include various

- 14 -

minutes from the Board meetings, internal analyses conducted by Company management and presented to the Board, as well as presentations provided by Jefferies to the Board. It will also include expert testimony concerning the intrinsic value of the Company at the time it was sold.

Because a breach of fiduciary duty claim and an aiding and abetting claim share many of the same elements, much of the evidence supporting plaintiffs' breach of fiduciary duty claim will also be used to support the aiding and abetting claim. In addition to the evidence outlined above, the Court understands that plaintiffs intend to introduce at trial evidence that, in the days leading up to the merger, Statoil was informed that Ben Brigham did not have Board authorization to agree to a deal at $36.50, yet Statoil nevertheless encouraged Ben Brigham to obtain full Board approval of the deal.

The Court also understands that plaintiffs will introduce evidence that Statoil negotiated extensively with the Company and enjoyed access to the Company's confidential information during the negotiation process and Statoil requested, and obtained, an exclusivity agreement from Brigham to prevent competing bidders from topping or competing with its bid. According to plaintiffs, this concession prevented Brigham from pursuing discussions with other potential bidders who were interested in making a bid for the Company during this time. Moreover, as the Court understands, plaintiffs intend to introduce evidence that Statoil sought to induce the Board's breaches of fiduciary duty by ensuring that certain Board members and company insiders received various benefits that the Company's unaffiliated public shareholders did not receive. For example, when the deal closed, company insiders received over $60 million dollars for unvested stock options. Statoil also provided golden parachutes to the rest of the management team, including post-merger employment contracts. While this evidence is only illustrative of the type of evidence plaintiffs' intend to use to support their aiding and abetting claim, it is common to the class and shows that the claim can be tried on a class-wide basis. *See In re Rural Metro Corp.*, 88 A.3d at 80.

- 15 -

With respect to plaintiffs' claim that the Board breached its duty of candor, plaintiffs intend to prove this claim through the Company's Schedule 14D-9 and Schedule TO, various internal documents and testimony from Brigham's directors, officers and executives reflecting the true facts, and the likelihood that those facts would be important to the shareholders' decision to tender their shares to Statoil. In short, the focus of plaintiffs' claims is on defendants' actions leading up to the sale.

### 2. Plaintiffs Will Prove with Common Evidence Causation and Amount of Damages

Plaintiffs intend to demonstrate causation through, *inter alia*, documents and testimony from Brigham, its Board and Statoil, showing that the injury to Class members in the form of inadequate consideration was foreseeable and an intended consequence of the actions of defendants in structuring and agreeing to a sale of the Company. *Oliver v. Boston Univ.*, No. 16570-NC, 2002 Del. Ch. LEXIS 21, at *24-*25 (Del. Ch. Feb. 28, 2002) (in merger cases, all shareholders suffer "a common harm that is related to the allegedly wrongful merger and the inadequate disclosures associated with it").

With the assistance of their expert(s), plaintiffs will use common proof to demonstrate injury to Class members and calculate total damages for the Class without the need to resort to information collected from individual Class members. That common proof will be expert testimony establishing the difference between the true value of the Company and the amount actually received by the shareholders. The amount actually received is the $36.50 that all shareholders received when they either tendered their shares to Statoil or were cashed-out. If plaintiffs establish liability and damages, class members will claim their *pro rata* portion of the judgment by submitting a claim form showing the number of shares of Brigham stock they held at the time the merger was announced. *See Joseph v. Shell Oil Co.*, No. 7450, 1985 Del. Ch. LEXIS 458, at *14 (Del. Ch. Feb. 8, 1985) ("In short, if a finding of damages occurs, the damages will be mathematically

- 16 -

allocated on a per share basis to all the stockholders in similar circumstances. There is a total absence of individual issues and therefore there would be no reason for the Court to make a separate finding of damages as to each share or each shareholder."); *Rural/Metro*, 102 A.3d at 224-25.

### 3. Defendants' Defenses Are Susceptible to Common Proof

Once plaintiffs have concluded their case-in-chief, the burden will shift to defendants to present evidence in support of their defenses. Based upon the parties' submissions in connection with plaintiffs' motion, the Court believes that the defenses pleaded by defendants are subject to common proof and will not present manageability problems. The Court assumes for purposes of this trial plan that all of the defenses pleaded by defendants apply to plaintiffs' claims and will be presented at trial.

As an initial matter, several of defendants' pleaded defenses (Nos. 1 and 9 ) are legal matters for the Court, not factual matters for the jury, and can be resolved through pre-trial motion practice. Moreover, because these defenses will resolve the claims of the entire class, if they have merit, they do not present individualized issues which would preclude a class-wide trial on the merits of plaintiffs' claims. With respect to defense No. 2 – regarding the business judgment rule – the appropriate burden(s) shouldered by each of the parties at trial will be reflected in the jury instructions. Because the burdens will govern the claims of the entire class, they will not present individualized issues.

Defendants have raised three defenses (Nos. 3, 5 and 6) in which they assert that they acted in good faith and without intent to deceive, and that they did not know of the untruths or omissions at issue. These defenses will depend on many of the same sources of common proof used to support plaintiffs' claims, including the testimony of the Individual Defendants, the testimony of current and former executives, officers and managers at Brigham and Statoil, correspondence to and from the

- 17 -

defendants during the sales process, and the Schedule 14D-9 and Schedule TO disseminated to Brigham's shareholders. In similar vein, defendants' 8 Del C. §141(e) defense will center on the Individual Defendants' testimony and beliefs regarding the opinions of the Board's financial advisors, and internal corporate documents about the competence, selection and performance of those advisors during the sales process.

With respect to defendants' fourth pleaded defense, materiality does not present an issue that requires proof from individual Class members. As noted above, materiality is judged according to an objective standard, *Arnold*, 650 A.2d 1277, and *TSC*, 426 U.S. 438, and, as such, can be proved through evidence common to the Class. *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998) (directors who fail to disclose all material information breach their duty of candor to each and every one of the Company's shareholders); *see also Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 653 (Tex. App.–Houston [14th Dist.] 1995, writ dism'd w.o.j.) (concluding that where shareholders' injuries arise from defendants' uniform scheme of misrepresentations, typicality is satisfied). Also, as noted above, causation and damages do not raise individual issues of proof under Delaware law for post-merger disclosure claims for damages. *See infra* §II.D (citing *Rural Metro*, 88 A.3d 54, and *Rural/Metro*, 102 A.3d 205). A failure of proof on these questions will not result in individual inquiries; instead, it will simply end plaintiffs' disclosure claims.

In support of the defenses based upon §102(b)(7) (Nos. 10 and 11), the Individual Defendants intend to offer, *inter alia*, proof of their positions on the Board and their actions leading up to the acquisition; that they retained sophisticated financial and legal advisors during the process; that they performed due diligence prior to agreeing to and recommending the tender offer and consummating the transaction, including due diligence about the value of the Company; and that they held numerous Board meetings to discuss and explore the various options available to the

- 18 -

Company going forward. This proof will come in the form of testimony from the Individual Defendants and internal corporate documents created during the process. Evaluating this evidence, the jury will decide whether the Individual Defendants' actions (a) were that of a director as opposed to an officer and (b) constituted a breach of care as opposed to breach of loyalty – thereby immunizing a particular defendant (or defendants) from monetary damages. 8 Del. C. §102(b)(7); *Emerald Partners*, 787 A.2d at 92.

Defendants also assert defenses based on the equitable doctrines of accord and satisfaction, waiver, acquiescence, ratification and estoppel. The certified Class is comprised of "[a]ll holders of Brigham common stock as of October 17, 2011." The Class includes both shareholders who tendered their Brigham shares to Statoil and shareholders who did not. Based upon defendants' submissions, the Court understands that defendants intend to attempt to prove at trial that the former group is subject to these defenses because they tendered their shares voluntarily and with full knowledge of their rights and the material facts surrounding the acquisition. Defendants intend to do so through evidence showing that Brigham entered into a merger agreement with Statoil, that Statoil commenced a tender offer pursuant to that agreement, and that a percentage of Brigham's shareholders tendered their shares to Statoil and were paid a single price – $36.50 – for each of their shares. They will also offer the Schedule 14D-9 and Schedule TO.

As a practical matter, these defenses merge with the merits of plaintiffs' non-disclosure claims. Both claims turn on whether the Schedule 14D-9 and Schedule TO disclosed all material facts to Brigham's shareholders.[1] If plaintiffs establish that defendants did not disclose all material facts, plaintiffs will prevail on their non-disclosure claims and will negate one of the elements of the

---

[1] Plaintiffs have stipulated that, if defendants can prove that all material information relating to the merger was disclosed in the Schedule 14D-9 or Schedule TO, or otherwise publicly made available, defendants need not prove that each Class member was individually aware of these facts.

- 19 -

defenses – *i.e.*, that Brigham's shareholders had full knowledge of all material facts surrounding the acquisition when they tendered their shares to Statoil. The doctrines of ratification, waiver, acquiescence and estoppel only apply if the shareholder was fully informed. *infoGROUP*, 2013 Del. Ch. LEXIS 43, at *25; *Am. Family*, 1994 Del. LEXIS 105, at *13; *O'Malley*, 2002 Del. Ch. LEXIS 33, at *22 n.28.

If plaintiffs do not establish that shareholders were misled, plaintiffs' non-disclosure claims fail and defendants are entitled to judgment on that claim, without the need for a separate finding on the defenses. Either way, these defenses will be disposed of as the parties litigate the merits of plaintiffs' claims.

Any issues concerning defendants' remaining defense – that another party may be responsible for all or a portion of any harm to the Class – can be resolved through the use of an appropriate jury form. The jury will not be required to decide the issue of proportionate responsibility unless and until, there is first an appropriate finding of liability. No issue of proportionate responsibility arises unless there is first a determination of some responsibility for damages by at least one defendant. If there is a finding of liability, the jury can be asked in a verdict form to determine how much of the responsibility for the harm, in percentage terms, to place on defendants and any culpable non-parties.

DATED: March 19, 2015

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
RANDALL J. BARON
DAVID T. WISSBROECKER
STEVEN M. JODLOWSKI

_____
                        RANDALL J. BARON

- 20 -

1014363_1

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Class Counsel for Plaintiffs

BOULETTE & GOLDEN LLP
MICHAEL D. MARIN
Texas Bar #00791174
2801 Via Fortuna Drive, Suite 530
Austin, TX 78746
Telephone: 512/732-8900
512/732-8905 (fax)

Liaison Counsel

KENDALL LAW GROUP, LLP
JOE KENDALL
DANIEL HILL
JAMIE J. McKEY
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: 214/744-3000
214/744-3015 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8150 N. Central Expressway, Suite 1575
Dallas, TX 75206
Telephone: 214/239-4568
281/254-7789 (fax)

ARMBURST & BROWN, PLLC
MICHAEL BURNETT
100 Congress Avenue, Suite 1300
Austin, TX 78702
Telephone: 512/435-2300
512/435-2360 (fax)

- 21 -

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

DUNNAM DUNNAM HARMON WEST
  LINDLEY & RYAN LLP
HAMILTON P. LINDLEY
4125 W. Waco Drive
Waco, TX 76710
Telephone: 254/753-6437
254/753-7434 (fax)

BRODSKY & SMITH, LLC
EVAN J. SMITH
MARC ACKERMAN
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Telephone: 610/667-6200
610/667-9029 (fax)

LEVI & KORSINSKY, LLP
SHANE T. ROWLEY
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212/363-7500
866/367-6510 (fax)

KOHN, SWIFT & GRAF, P.C.
DENIS F. SHEILS
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Telephone: 215/238-1700
215/238-1968 (fax)

THE WEISER LAW FIRM, P.C.
PATRICIA C. WEISER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610/225-2677
610/225-2678 (fax)

- 22 -

1014363_1

RYAN & MANISKAS, LLP
KATHARINE M. RYAN
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

SAXENA WHITE P.A.
JONATHAN M. STEIN
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone: 561/394-3399
561/394-3382 (fax)

Additional Counsel for Plaintiffs

1014363_1


# Appendix C

Cause No. D-1-GN-11-003205
**(Consolidated)**

| | | |
|---|---|---|
| RAYMOND BOYTIM, et al., Individually and on Behalf of All Others Similarly Situated, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | TRAVIS COUNTY, TEXAS |
| vs. | § § | |
| BRIGHAM EXPLORATION COMPANY, et al., | § § § | 201st JUDICIAL DISTRICT |
| Defendants. | § § § § | |

---

**PLAINTIFFS' PROPOSED AMENDED PRELIMINARY PLAN FOR
TRIAL OF CLASS CLAIMS**

---

759959_1

Plaintiffs submit this trial plan in support of their motion for class certification. This plan provides a detailed outline to aid the Court in assessing how a single trial can be conducted against Brigham Exploration Company ("Brigham" or the "Company"), the members of its Board of Directors (the "Individual Defendants" or the "Board"), and Statoil ASA ("Statoil") on behalf of a proposed class of all holders of Brigham common stock as of October 17, 2011. Discovery has not been completed, so this plan is, by necessity, incomplete. Plaintiffs reserve the right to suggest changes to this plan in advance of trial in light of the completion of discovery, reports from experts, changes in the law, and orders arising from any summary judgment motions. It is evident, however, from discovery conducted to date that trial of this action on a class-wide basis will present no unduly challenging manageability issues.

This plan will address the class certification issues, the claims arising from defendants' actions, the manner in which defendants' common course of conduct will be proven at trial, and other issues relating to the management and superiority of a class-wide trial. As discussed below, this action stems from the sale of Brigham to Statoil for $36.50 per share of Brigham stock. That sale was completed on December 8, 2011, one-and-a-half months after Brigham and Statoil announced to shareholders that the companies had entered into a definitive merger agreement. Plaintiffs allege that Brigham's directors breached their fiduciary duties to shareholders in agreeing to and facilitating the sale. Plaintiffs also bring a claim against Brigham and Statoil for aiding and abetting the breach of fiduciary duty.

At this time, plaintiffs envision a single trial with the following procedural steps:

1.     Plaintiffs will present their case-in-chief, submitting common evidence of defendants' wrongdoing, class-wide injury, and total damages;

2.     The Individual Defendants will present the defenses they wish to advance;

- 1 -

759959_1

3. Brigham and Statoil will present the defenses they wish to advance;

4. Plaintiffs will present their rebuttal case; and

5. The case will be submitted to the jury, which will enter a verdict based on a proposed jury charge.

Counsel for plaintiffs are deeply experienced in takeover litigation, especially in takeover cases after the acquisition closes, and have prepared similar cases for trial. Counsel for plaintiffs have also tried numerous takeover cases, including at least one action in Texas. Plaintiffs will present their case through the testimony of their experts; the testimony and documents of the Individual Defendants, Brigham and Statoil; the testimony and documents of defendants' financial advisors; and, potentially, the documents and testimony of Shell, ENI, Chevron and Total, four potential buyers.

If a verdict for the plaintiffs results, judgment in a total, single monetary sum will be entered in favor of the Class. A post-judgment proceeding will follow, in which the Court will approve the procedure for distributing checks (or direct deposits) to each individual Class member based on plaintiffs' expert's damage calculations. Plaintiffs will ask the Court to approve the final allocation of damages. If a verdict is returned in favor of defendants, judgment dismissing the action with prejudice would be entered.

## I.  PLAINTIFFS' CLAIMS

This action involves claims against Brigham's Board for breach of its fiduciary duties, and a claim against the Company and Statoil for aiding and abetting the Board's breach of fiduciary duties.

### A.  Breach of Fiduciary Duty of Due Care, Loyalty and Good Faith Against the Individual Defendants

The primary claim in this case is a claim for breach of fiduciary duty against the members of Brigham's Board at the time of the acquisition. That claim is governed by Delaware law because

- 2 -

759959_1

Brigham is a Delaware corporation. Article 8.02 of the Texas Business Corporation Act provides that the internal affairs (including the actions of its Board Members) of a foreign corporation doing business in Texas are controlled by the substantive law of the state of incorporation.

Directors owe fiduciary duties of care and loyalty to the corporation and its shareholders. *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989); *accord Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986). In the context of a change of control, such as this, courts review directors' conduct under the enhanced scrutiny standard and must employ "less tolerance for slack by the directors" and be cognizant of the fact that "[a]lthough the directors have a choice of means, they do not comply with their [fiduciary] duties unless they undertake reasonable steps to get the best deal." *In re NetSmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 192 (Del. Ch. 2007); *see also Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003); *Revlon*, 506 A.2d 173. The enhanced scrutiny test requires:

> (a) a judicial determination regarding the adequacy of the decisionmaking process employed by the directors, including the information on which the directors based their decision; and (b) a judicial examination of the reasonableness of the directors' action in light of the circumstances then existing.

*Paramount Commc'ns v. QVC Network*, 637 A.2d 34, 45 (Del. 1994); *Omnicare*, 818 A.2d at 931. Under the enhanced scrutiny test, "[t]he directors have the burden of proving that they were adequately informed and acted reasonably." *Paramount*, 637 A.2d at 45.

**B.     Breach of Fiduciary Duty of Candor Against the Individual Defendants**

Plaintiffs' second claim against the Individual Defendants stems from defendants' dissemination of a Schedule 14D-9 and a tender offer statement on Schedule TO, filed with the Securities and Exchange Commission on October 28, 2011. Plaintiffs allege that those documents were false and misleading, and that defendants failed to disclose all material information to Brigham

- 3 -

731     949

shareholders, which prevented shareholders from having sufficient information to decide whether to tender their shares to Statoil.

As part of their fiduciary duty to Brigham's shareholders, the Board must fully and fairly disclose all material information within the Board's control. *See Netsmart*, 924 A.2d at 202; *In re Pure Resources, Inc., S'holders Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002) ("When a document ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts."). The determination of whether the Board breached that duty in this instance turns on the materiality of the alleged non-disclosures and omissions. Under relevant case law, courts determine materiality by assessing whether there is a substantial likelihood that a reasonable shareholder would consider the fact important in deciding how to vote. *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

### C. Aiding and Abetting Breach of Fiduciary Duty Against Brigham and Statoil

Plaintiffs also have a claim against Brigham and Statoil, for aiding and abetting of the breaches of fiduciary duties by the Individual Defendants, as members of the Board of Brigham. *Rand v. Western Airlines*, No. 8632, 1989 Del. Ch. LEXIS 118 , at *14 (Del. Ch. Sept. 11, 1989) ("[I]f there were objective evidence that the transaction benefits the fiduciaries at the stockholders' expense, knowing participation by a third party might be inferable." ). "A third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly participates' in the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

## II. CLASS ISSUES

### A. Procedural History

This action was initiated on October 17, 2011, when Raymond Boytim filed a complaint stemming from the announcement by Brigham and Statoil that the companies had entered into a

- 4 -

759959_1

merger agreement. Several additional Brigham shareholders filed similar actions. The actions were thereafter consolidated. On November 10, 2011, plaintiffs moved for an order preventing defendants from closing the tender offer and taking down any tendered shares until defendants cured the breaches of fiduciary duty set forth in plaintiffs' complaint. That motion was denied, and Statoil closed the transaction on December 8, 2011.

After the sale was consummated, plaintiffs filed a second amended consolidated petition, which added a claim for damages. Plaintiffs also added factual allegations based on their review of the documents and deposition testimony provided by defendants prior to the close of the transaction. In early March 2012, plaintiffs filed a third amended class action petition for breach of fiduciary duty. The petition added several additional named plaintiffs, but was otherwise identical to the second amended petition filed in January. Defendants have not filed an answer or otherwise responded to the third amended class action petition.

On March 8, 2012, the parties submitted, and the Court approved, a stipulation concerning a pre-trial schedule. Under the schedule, all fact discovery must be completed by October 1, 2012; all expert discovery must be completed by February 1, 2013; any motions for summary judgment must be filed by February 22, 2013; and all pre-trial briefs and motions *in limine* are due by June 14, 2013. The parties must confer with each other and the Court, on or before June 23, 2013, to determine a trial date. Additionally, the stipulation established rules for the production of documents and discovery relating to experts. Discovery is ongoing.

### B.    Common Questions of Law and Fact Predominate

Under Rule 42(b)(3), the moving party must show that the class should be maintained because common questions of fact or law predominate over any questions affecting only individual members. *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000) (if the moving party seeks to

- 5 -

759959_1

certify a predominance-of-common-questions action, the commonality determination under Rule 42(a) is subsumed under the predominance determination). The test for predominance is whether common or individual issues will be the object of most of the efforts of the litigants and the Court. *Id.* at 434; *Snyder Commc'ns, L.P. v. Magana*, 142 S.W.3d 295, 300 (Tex. 2004) ("In evaluating whether common issues predominate, courts must identify the controlling substantive issues of the case and assess which issues will predominate to determine whether those issues are in fact common to the class. Courts must therefore determine 'whether common or individual issues will be the object of most of the efforts of the litigants and the court.'") (citing *Schein v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002)).

For all of their claims, plaintiffs will rely on common proof derived directly from Brigham's directors, officers and executives, and from plaintiffs' expert(s), to prove their claims. Below is an evidentiary outline demonstrating how this case will be tried as a class action without manageability problems.

### 1. Plaintiffs Will Prove Breach of Fiduciary Duty Through Common Evidence

The elements of breach of fiduciary duty are common to each member of the stockholder class. Plaintiffs will show that defendants breached their fiduciary duties to shareholders when they agreed to the sale of Brigham.

This evidence will show that defendants allowed the sales process to be driven and finished by a conflicted management team led by Ben M. Brigham and a conflicted banker, Jefferies & Company, Inc. ("Jefferies"). The Board allowed itself to be steered into a transaction with Statoil by a management team who was intent on achieving a liquidity event for their tens of millions of dollars in otherwise illiquid holdings in the Company. Plaintiffs also allege that defendants erected barriers to discourage other offers for the Company and its assets.

- 6 -

This misconduct will be proved with uniform evidence of the defendants' activities found in the contemporaneously created internal Brigham and Statoil documents; testimony from Brigham's directors and officers, and certain of its executives; testimony from Statoil's Chief Executive Officer, Helge Lund, and John Knight, its Executive Vice President of Global Strategy and Business Development; documents and testimony from Jefferies, the financial advisor retained by the Brigham Board; and documents and testimony from Shell, ENI, Chevron and Total, four other potential buyers of Brigham.

The same common evidence will also show that defendants were acting in their own interests, rather than in the interests of stockholders, when they granted themselves what were essentially spring-loaded options by amending their existing equity incentive package to provide for acceleration and immediate vesting of their outstanding options and restricted shares so that they could cash out in a merger with Statoil. Defendants also provided rich golden parachutes to the rest of the management team to assure everyone at the Company was incentivized to push for a deal with Statoil.

Plaintiffs also intend to show that the Board consciously disregarded hundreds of millions, if not billions, of dollars in shareholder value represented in the stand-alone plan of the Company. Common evidence of this breach will include various minutes from the Board meetings, internal analyses conducted by Company management and presented to the Board, as well as presentations provided by Jefferies to the Board. It will also include expert testimony concerning the intrinsic value of the Company at the time it was sold.

With respect to plaintiffs' claim that the Board breached its duty of candor, plaintiffs intend to prove this claim through the Company's Schedule 14D-9 and a tender offer statement on Schedule TO, various internal documents and testimony from Brigham's directors, officers and executives

759959_1

reflecting the true facts, and the likelihood that those facts would be important to the shareholders' decision to tender their shares to Statoil. In short, the focus of the case is on defendants' actions leading up to the sale.

### 2. Plaintiffs Will Prove With Common Evidence Causation and Amount of Damages

Plaintiffs will demonstrate causation through, *inter alia*, documents and testimony from Brigham, its Board and Statoil, showing that the injury to Class members in the form of inadequate consideration was foreseeable and an intended consequence of the actions of defendants in structuring and agreeing to a sale of the Company.

With the assistance of their expert, plaintiffs will use common proof to demonstrate injury to Class members and calculate total damages for the Class without the need to resort to information collected from individual Class members. The damages calculation will be based on, among other things, the actual fair value of Brigham, including the value of the Company's recent oil discoveries in the Williston Basin. Plaintiffs may show damages, either by demonstrating what Total or Chevron (or some other would-be purchaser) would have been willing to pay had it been provided true information about the value of Brigham and been treated fairly in the sales process, or by demonstrating that the Company was worth more than what was paid. Each shareholder would receive their pro rata share of the damages if plaintiffs are successful.

DATED: September 12, 2012          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
DAVID T. WISSBROECKER
STEVEN M. JODLOWSKI

_____
DAVID T. WISSBROECKER

- 8 -

759959_1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Interim Class Counsel for Plaintiffs

BOULETTE & GOLDEN LLP
MICHAEL D. MARIN
Texas Bar #00791174
2801 Via Fortuna Drive, Suite 530
Austin, TX  78746
Telephone:  512/732-8900
512/732-8905 (fax)

Liaison Counsel

KENDALL LAW GROUP, LLP
JOE KENDALL
DANIEL HILL
JAMIE J. McKEY
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8117 Preston Road, Suite 300
Dallas, TX  75225
Telephone:  214/706-9314
214/706-9315 (fax)

- 9 -

759959_1

ARMBURST & BROWN, PLLC
MICHAEL BURNETT
100 Congress Avenue, Suite 1300
Austin, TX 78702
Telephone: 512/435-2300
512/435-2360 (fax)

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ, LLP
GREGORY N. NESPOLE
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
212/545-4653 (fax)

GOLDFARB LLP
HAMILTON LINDLEY
2501 North Harwood Street, Suite 1801
Dallas, TX 75201
Telephone: 214/583-2233
214/583-2234 (fax)

BRODSKY & SMITH, LLC
EVAN J. SMITH
MARC ACKERMAN
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone: 610/667-6200
610/667-9029 (fax)

FARUQI & FARUQI, LLP
SHANE T. ROWLEY
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: 212/983-9330
212/983-9331 (fax)

- 10 -

759959_1

KOHN, SWIFT & GRAF, P.C.
DENIS F. SHEILS
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Telephone: 215/238-1700
215/238-1968 (fax)

THE WEISER LAW FIRM, P.C.
PATRICIA C. WEISER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610/225-2677
610/225-2678 (fax)

RYAN & MANISKAS, LLP
KATHARINE M. RYAN
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

SAXENA WHITE P.A.
JONATHAN M. STEIN
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: 561/394-3399
561/394-3382 (fax)

Additional Counsel for Plaintiffs

759959_1



# Appendix D

Notice sent: Final Interlocutory None

Disp Parties:_____

Disp code: CVD / CLS ____

Redact pgs:_____

Judge___JKD____ Clerk___mVm___

DC    BK11327 PG689

## CAUSE NO. D-1-GN-11-003205

| | |
|---|---|
| RAYMOND BOYTIM, Individually and on Behalf of All Others Similarly Situated, § § § | IN THE DISTRICT COURT OF |
| Plaintiff, § § | |
| vs. § § | |
| Brigham EXPLORATION COMPANY, BEN M. Brigham, DAVID T. Brigham, HAROLD D. CARTER, STEPHEN C. HURLEY, STEPHEN P. REYNOLDS, HOBART A. SMITH, SCOTT W. TINKER, STATOIL ASA, and FARGO ACQUISITION, INC., § § § § § § § | TRAVIS COUNTY, TEXAS |
| Defendants. § § § | 201st JUDICIAL DISTRICT |

### ORDER DENYING TEMPORARY INJUNCTION

1.      On this 22nd day of November, 2011 came on to be heard Motion for Temporary Injunction ("Motion") filed by Plaintiff Raymond Boytim.

2.      The Court having found that all prerequisites of law have been satisfied and that this Court has jurisdiction over the parties and the subject matter of this cause, and having considered the pleadings on file, the arguments of counsel, and the evidence offered, finds as follows.

3.      Plaintiff asks the Court to enjoin the close of the tender offer by Statoil until Brigham Exploration discloses a net asset value analysis ("NAV") created by Jefferies in June 2011 (the "June 2011 NAV"). Plaintiff argues that Brigham Exploration's directors breached their fiduciary duty to the Brigham shareholders because they did not disclose the June 2011 NAV in the Schedule 14D-9, filed with the Securities and Exchange Commission and delivered to the Brigham shareholders.



US 709961v1

4.    The June 2011 NAV was created by Brigham Exploration's financial advisor, Jefferies, as marketing material to show potential buyers with more capital what could potentially be done with Brigham Exploration's assets. Brigham's CEO, Ben Brigham, testified that the June 2011 NAV is not a reliable indicator of Brigham Exploration's current value because Brigham Exploration lacks the capital to execute the model that is the basis for the June 2011 NAV. The Brigham board of directors did not ~~rely upon~~ _use_ the June 2011 NAV when it recommended that the Brigham Exploration shareholders accept the tender offer. Ralph Eads, a representative of Jefferies, also testified that the June 2011 NAV is unreliable. _to value shares_ Jefferies did not rely on the June 2011 NAV when it issued its fairness opinion in connection with the proposed tender offer.

5.    A temporary injunction may only be entered if the moving party demonstrates: (1) a probable right to the relief sought; (2) a probable, imminent, and irreparable injury in the absence of an injunction; and (3) that the balance of the equities favors the issuance of an injunction. _See Butnaru v. Ford Motor Co._, 84 S.W. 198, 204 (Tex. 2002).

6.    In order to demonstrate that he has a probable right to the relief sought, Plaintiff is required to show that the June 2011 NAV is likely to be material under Delaware Law. _See Solomon v. Armstrong_, 747 A.2d 1098, 1128 (Del. Ch. 1999), _aff'd_, 746 A.2d 277 (Del. 2000). In order to be considered material, the June 2011 must be reliable. _Van de Walle v. Unimation, Inc._, Civ. A. No. 7046, 1991 WL 29303, at *17 (Del. Ch. Mar. 7, 1991). "[V]aluations intended solely as sales pitches" need not be disclosed because they are not "responsible estimates of a company's value." _In re Pennaco_, 787 A.2d 691, 713 (Del. Ch. 2001).

7.    Plaintiff has not satisfied its burden to demonstrate that he has a reasonable probability of success on the merits. Because the June 2011 NAV constitute marketing

materials, Plaintiff is unlikely to demonstrate that the June 2011 NAV is either material or reliable, and that it therefore should have been disclosed.

8. Plaintiff has further failed to show that there will be irreparable injury if an injunction is not issued, and that the harm he will suffer absent an injunction is greater than the harm Defendants will suffer with an injunction.

9. IT IS THEREFORE ORDERED that Plaintiff's Motion for Temporary Injunction is DENIED.

SIGNED this the ___22___ day of _November_, 2011 at ___:___ o'clock a.m./p.m.

_____
JUDGE PRESIDING



# Appendix E

Vernon's Texas Rules Annotated
Texas Rules of Civil Procedure
Part II. Rules of Practice in District and County Courts
Section 3. Parties to Suits

TX Rules of Civil Procedure, Rule 42

Rule 42. Class Actions

Currentness

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law, or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these issues include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

**(c) Determining by Order Whether to Certify a Class Action; Notice and Membership in Class.**

(1)(A) When a person sues or is sued as a representative of a class, the court must--at an early practicable time--determine by order whether to certify the action as a class action.

(B) An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 42 (g).

(C) An order under Rule 42(c)(1) may be altered or amended before final judgment. The court may order the naming of additional parties in order to insure the adequacy of representation.

(D) An order granting or denying certification under Rule 42(b)(3) must state:

(i) the elements of each claim or defense asserted in the pleadings;

(ii) any issues of law or fact common to the class members;

(iii) any issues of law or fact affecting only individual class members;

(iv) the issues that will be the object of most of the efforts of the litigants and the court;

(v) other available methods of adjudication that exist for the controversy;

(vi) why the issues common to the members of the class do or do not predominate over individual issues;

(vii) why a class action is or is not superior to other available methods for the fair and efficient adjudication of the controversy; and

(viii) if a class is certified, how the class claims and any issues affecting only individual members, raised by the claims or defenses asserted in the pleadings, will be tried in a manageable, time efficient manner.

(2)(A) For any class certified under Rule 42(b)(1) or (2), the court may direct appropriate notice to the class.

(B) For any class certified under Rule 42(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through counsel if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

(vi) the binding effect of a class judgment on class members under Rule 42 (c)(3).

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

**(d) Actions Conducted Partially as Class Actions; Multiple Classes and Subclasses.** When appropriate (1) an action may be brought or maintained as a class action with respect to particular issues, or (2) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

**(e) Settlement, Dismissal or Compromise.**

(1)(A) The court must approve any settlement, dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B) Notice of the material terms of the proposed settlement, dismissal or compromise, together with an explanation of when and how the members may elect to be excluded from the class, shall be given to all members in such manner as the court directs.

(C) The court may approve a settlement, dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, dismissal, or compromise is fair, reasonable, and adequate.

(2) The parties seeking approval of a settlement, dismissal, or compromise under Rule 42(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, dismissal, or compromise.

(3) In an action previously certified as a class action under Rule 42(b)(3), the court may not approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(4)(A) Any class member may object to a proposed settlement, dismissal, or compromise that requires court approval under Rule 42(e)(1)(A).

(B) An objection made under Rule 42(e)(4)(A) may be withdrawn only with the court's approval.

**(f) Discovery.** Unnamed members of a class action are not to be considered as parties for purposes of discovery.

**(g) Class Counsel.**

(1) Appointing Class Counsel.

(A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.

(B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.

(C) In appointing class counsel, the court

(i) must consider:

the work counsel has done in identifying or investigating potential claims in the action;

counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

counsel's knowledge of the applicable law; and

the resources counsel will commit to representing the class;

(ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv) may make further orders in connection with the appointment.

(2) Appointment Procedure.

(A) The court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action.

(B) When there is one applicant for appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 42(g)(1)(B) and (C). If more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant or applicants best able to represent the interests of the class.

(C) The order appointing class counsel may include provisions about the award of attorney fees or nontaxable costs under Rule 42(h) and (i).

**(h) Procedure for determining Attorney Fees Award.** In an action certified as a class action, the court may award attorney fees in accordance with subdivision (i) and nontaxable costs authorized by law or by agreement of the parties as follows:

(1) Motion for Award of Attorney Fees. A claim for an award of attorney fees and nontaxable costs must be made by motion, subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) Objections to Motion. A class member, or a party from whom payment is sought, may object to the motion.

(3) Hearing and Findings. The court must hold a hearing in open court and must find the facts and state its conclusions of law on the motion. The court must state its findings and conclusions in writing or orally on the record.

**(i) Attorney's fees award.**

(1) In awarding attorney fees, the court must first determine a lodestar figure by multiplying the number of hours reasonably worked times a reasonable hourly rate. The attorney fees award must be in the range of 25% to 400% of the lodestar figure. In making these determinations, the court must consider the factors specified in Rule 1.04(b), TEX. DISCIPLINARY R. PROF. CONDUCT.

(2) If any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class.

**(j) Effective date.** Rule 42(i) applies only in actions filed after September 1, 2003.

**Credits**
Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of Sept. 20, 1941, eff. Dec. 31, 1941; May 9, 1977, eff. Sept. 1, 1977; Dec. 5, 1983, eff. April 1, 1984; Oct. 9, 2003, eff. Jan. 1, 2004.

Vernon's Ann. Texas Rules Civ. Proc., Rule 42, TX R RCP Rule 42
Current with amendments received through 6/1/2015